JOHN H. JONES, WILLIAM W. HARVEY, AND CHARLES H. BARRY v. ROBINSON PASHBY AND FRANKLIN B. PASHBY.

[See 48 Mich. 634.]

*Description of land in deed—Word "half" means half in quantity—Unless context or surrounding facts show contrary intention—Deed must be construed, if possible, as a whole—General description, followed by particular one, limited thereby—Object of description to define what was intended to be conveyed—Deeds should be construed with reference to actual state of property at time of execution—Question of what constitutes boundary line for the jury—May be proved by evidence admissible to prove any other fact—Actual occupation, ancient reputation, admission of party in possession against his interest, agreement of parties as to its actual location, all admissible—By act of Congress, in government survey, "east half" refers, not to quantity, but to a line equidistant from boundary lines of parcel subdivided—Same rule applies to United States patents—Deed of "east half" of a parcel of land according to United States survey—Excludes idea of equal quantities—Ejectment—Involving location of boundary line—Its actual location by agreement of the parties may be shown—Such evidence is for the jury.*

1. The word "half," when used in describing land, should be construed as meaning "half in quantity," unless the *context* or surrounding facts and circumstances show a *contrary* intention.

   So *held*, in a case where *two* tenants in common of a parcel of land, which could not be *equally* divided by a north and south line drawn equidistant from its east and west lines, conveyed to each other the "east half" and "west half," respectively, of said parcel, containing an equal number of acres, and without reference to the "government survey."

2. A deed must be so construed, if possible, that no part shall be *rejected*; and if the description be *general*, followed by a *particular* one, the *latter* limits and defines the *terms* of the grant.

3. The *object* of the descriptive part of a deed is to *define* what the parties intended, the one to convey and the other to receive; and it is a *canon* of construction that deeds should be construed with reference to the *actual* state of the property at the *time* of their *execution*.

4. What constitutes a boundary line in a deed is a *fact* for the jury, and may be proved by any kind of evidence admissible to prove *any* fact. Proof of actual occupation, ancient reputation, the admission of a party in possession against his interest, and the agreement of the parties as to the *actual* location of such boundary line, is admissible.

5. In government surveys of the public lands the terms "east half" and "west half" are used, not with reference to *quantity*, but to a line equidistant from the boundary lines of the parcel subdivided, and *these* terms have the same signification in patents issued by the government; and this is true because so provided by act of Congress.

6. A deed of the "east half" of a parcel of land "according to the United States survey" is *definite*, and *excludes* the idea of two *equal* quantities, and fixes the dividing line equidistant from the boundary lines of the parcel thus subdivided.

7. Upon the trial of an action of ejectment involving the location of a boundary line, evidence *tending* to show its *actual* location by *agreement* of the owners of the land affected is admissible, and should be submitted to the jury.

Error to St. Joseph. (Pealer, J.) Argued June 8, 1886. Decided October 7, 1886.

Ejectment. Plaintiffs bring error. Reversed. The facts are stated in the opinion.

*John B. Shipman* and *H. H. Riley*, for appellants:

The laws of Congress only fix the lines of sections, half-sections, quarter-sections, half quarter-sections, and quarter quarter-sections. The boundary of a half half-quarter-section is not included, and is not authorized by law : Rev. Stat. U. S. §§ 2396, 2397.

The west half of this fraction south of the road means the west half of the quantity, divided from the remainder by a north and south line: *Au Gres Boom Co. v. Whitney*, 26 Mich. 42; *Dart v. Barbour*, 32 Id. 267.

The legal definition of a half is " one equal part of a thing divided into two parts : " Bouv. Dict.

Quantity is a part of the description of the land, and will not be rejected unless inconsistent with fixed boundaries and known monuments mentioned in the deed, limiting the area : 3 Washb. Real Prop. 630.

The deeds between Charles and James Richardson each described the half conveyed as containing fifty acres. The only construction which can harmonize the entire deed is that which gives to each fifty acres, and therefore this one must be adopted : *Purkiss v. Benson*, 28 Mich. 538.

Acquiescence in boundary line for fifteen years ought not to be disturbed, and some weight ought to be given to acquiescence for a less time in determining how the Richardsons construed and occupied under their own deeds from

each other: *Smith v. Hamilton*, 20 Mich. 438; *Joyce v. Williams*, 26 Id. 332; *Stewart v. Carleton*, 31 Id. 270; *Dupont v. Starring*, 42 Id. 492.

The bill filed in chancery by Robinson Pashby to foreclose his mortgage deed adjusted nothing beyond what was in issue in the pleadings: *Creasey v. St. George's Society*, 34 Mich. 51; *Connerton v. Millar*, 41 Id. 608.

*D. C. Page* and *Keightley & Knowlen*, for defendants:

The admission in evidence of the journal entries and proceedings on the former trial could give no additional information to the court, and under the charge of the court directing a verdict for the defendants it could not possibly have prejudiced the plaintiffs' case: *Hoyt v. Southard*, 58 Mich. 432; *Drysdall v. Smith*, 44 Id. 119.

Where two adjoining proprietors recognize a certain dividing line as the true line, and one accordingly erects improvements and maintains possession thereof for many years, the other will be estopped from disturbing his title, although the line was fixed erroneously: *Dupont v. Starring*, 42 Mich. 492; *Joyce v. Williams*, 26 Id. 332; *Stewart v. Carleton*, 31 Id. 270; *Fahey v. Marsh*, 40 Id. 236; *Burns v. Martin*, 45 Id. 22; *Major's Heirs v. Rice*, 57 Mo. 384.

And this will be the case, even though the time elapsed is not sufficient to create a bar under the statute of limitations: *Joyce v. Williams*, 26 Mich. 332; *Smith v. Hamilton*, 20 Id. 433.

The case stands precisely the same between the grantees of such respective owners as if the occupation had been continued by the owners themselves, who originally established the division line: *Joyce v. Williams*, 26 Mich. 332; *Smith v. Hamilton*, 20 Id. 433.

CHAMPLIN, J. March 30, 1868, one Ann Ewing was the owner of certain land situated in the county of St. Joseph, Michigan, known as the E. ½ of the N. W. ¼, and the E. ½ of the S. W. frl. ¼, of sec. 36, in T. 7 S., R. 11 W. Her title was obtained by deed from one Alexina Fullum, and on the same day she conveyed the same by warranty deed to James and Charles Richardson.

On the twentieth of May, 1872, James Richardson and Charles Richardson, respectively, executed quitclaim deeds

to each other of certain portions of said land by way of dividing the same between them.

The deed from James Richardson to Charles Richardson describes the lands thereby conveyed as follows:

"The W. ½ of the E. ½ of the N. W. ¼, and the W. ½ of the E. ½ of the S. W. frl. ¼, all in sec. 36, T. 7 S., of R. 11 W., containing 50 acres of land, being the W. ½ of 100 acres of land deeded by Alexina Fullum to Ann Ewing and Charles Ewing, her husband, on the thirteenth of October, 1866. The party of the first part reserves to himself and his heirs one-half of all fruit that grows on the orchard now on the above-described land, the house, and sufficient yard for the use of said house, for a term of ten years; and it is further agreed between the above-named parties that if the said James Richardson sells the east half of the land deeded to him and Charles Richardson by Ann and Charles Ewing, the reservation of the house and the one-half of the fruit trees shall cease and be null and void."

The quitclaim deed from Charles Richardson to James Richardson, of May 20, 1872, describes the lands thereby conveyed as follows:

"The E. ½ of the E. ½ of the N. W. ¼, and the E. ½ of the E. ½ of the S. W. frl. ¼, all in sec. 36, T. 7 S., of R. 11 W., containing 50 acres of land, being the E. ½ of 100 acres of land deeded by Alexina Fullum to Ann Ewing and Charles Ewing, her husband, October 13, 1866."

October 5, 1872, James Richardson conveyed by warranty deed his portion of said lands to Robert Mandigo, describing them in the same terms as in the aforesaid deed from Charles Richardson to him.

Robert Mandigo and wife, on the thirtieth day of January, 1875, by a warranty deed in form, but intended as a mortgage, conveyed or mortgaged the same premises to Robinson Pashby, one of the defendants, describing them in the same way. Prior to this, however, Mandigo had built on the premises in dispute the house called in the record the Lake View House, and made other improvements thereon in the way of barns, sheds, trees, etc.

After receiving this mortgage deed Robinson Pashby, in March, 1876, went into possession of the premises in dispute,

as well as all the premises therein described, and by himself
or by his tenants has ever since continued in the possession,
use, and cultivation of the same.

On the nineteenth of March, 1877, Robinson Pashby filed
his bill in the circuit court for the county of St. Joseph, in
chancery, against Robert Mandigo and wife and the plaint-
iffs in this suit as defendants, to have his said deed of Janu-
ary 30, 1875, declared to be a mortgage, and to have the same
foreclosed.

The said defendants severally put in their answers, with
the exception of Mrs. Mandigo, and the bill and these an-
swers were all put in evidence on the trial of this suit in the
circuit court.

Most of the material allegations in the bill were denied by
Mandigo in his answer, and particularly the amount claimed
by Pashby to be due him from Mandigo; and a claim for
an accounting by Pashby for the rents and profits of the prem-
ises while he had been in possession was set up by Mandigo.

The answer of Mandigo was adopted by the other defend-
ants as their answer, they each claiming also a lien on the
premises as judgment creditors of Mandigo by virtue of ex-
ecution levies thereon, which were the occasion of their hav-
ing been made parties defendant in the same bill.

In the testimony given on the part of the defendants in
that chancery suit, the rental value of the premises in con-
nection with, and as increased or affected by, the Lake View
House as being on the same, was considered, and its value
testified to, and its use.

The court declared the deed from Mandigo to Pashby to
be a mortgage, and a large amount to be due thereon, after
the accounting was had, and ordered a sale of the premises
to satisfy the same, and they were subsequently sold under
said decree to Robinson Pashby for $2,500, and he received
the commissioner's deed on June 29, 1878.

The plaintiffs' source of title also springs from Ann Ewing,
and flows in the same channel as defendants' to James and
Charles Richardson, and from Charles Richardson and wife
to plaintiffs, dated May 7, 1878, and recorded the next day,

which contains and purports to convey the following description of land:

"Beginning at the S. W. corner of the E. $\frac{1}{2}$ of the E. $\frac{1}{2}$ of the N. W. $\frac{1}{4}$ of sec. 36, T. 7 S., R. 11 W., thence south, $3\frac{3}{4}°$ W., 4.42 ch.; thence south, $80\frac{3}{4}°$ W., 4.17 ch.; thence south, $24\frac{3}{4}°$ W., 1.60 ch., to Klinger's lake; thence along the meanderings of said lake south-easterly as follows: S., $61\frac{1}{4}°$ E., 5.44 ch.; thence south, $3\frac{3}{4}°$ E., 3.60 ch.; thence leaving the lake, north 11.04 ch., to the E. and W. $\frac{1}{4}$ line of said sec. 36; thence west along said $\frac{1}{4}$ line 2.76 ch., to the place of beginning, containing $4\frac{1}{2}$ acres, be the same more or less; being a part of the S. W. frl. $\frac{1}{4}$ of sec. 36, T. 7 S., of R. 11 W."

The premises in dispute are described in the plaintiffs' declaration as follows:

"Beginning at the S. W. corner of the E. $\frac{1}{2}$ of the E. $\frac{1}{2}$ of of the N. W. $\frac{1}{4}$ of sec. number 36, in T. number 7 S., of R. number 11 W.; thence south along the division line between the E. and W. halves of the E. $\frac{1}{2}$ of the N. W. $\frac{1}{4}$ of said section produced 9.36 ch., to Klinger's lake; thence along said lake south, $58\frac{3}{4}°$ E., 3.23 ch.; thence north 11.04 ch., to the E. and W. $\frac{1}{4}$ line of said section; thence west along said $\frac{1}{4}$ line 2.76 ch., to the place of beginning.

"And whereas, the said plaintiffs, on the said first day of August, A. D. 1878, were also possessed of the following lands, also situate in the said township of White Pigeon, county of St. Joseph, and State of Michigan, and being known and described as follows, to wit: Beginning at the S. W. corner of the E. $\frac{1}{2}$ of the E. $\frac{1}{2}$ of the N. W. $\frac{1}{4}$ of sec. 36, T. number 7 S., of R. number 11 W.; thence south along the division line between the E. and W. $\frac{1}{2}$ of the E. $\frac{1}{2}$ of the N. W. $\frac{1}{4}$ of said section produced 9.36 ch., to Klinger's lake; thence along said lake south, $58\frac{3}{4}°$ E., .67 ch.; thence north 9.71 ch., to the E. and W. $\frac{1}{4}$ line of said section; thence west along said $\frac{1}{4}$ line .57 ch., to the place of beginning."

The case will be better understood from the diagram found on the following page:

The whole diagram includes the lands conveyed by Ann and Charles Ewing to Charles and James Richardson, described in the deed from Alexina Fullum to the Ewings as containing 100 acres.

The line 1–3 is a line which is equidistant from the east and west lines of the tract, and is the line contended for by the

defendants as dividing it into east and west halves. The line 4–5 is a line which would divide the whole tract into two fifty-acre parcels. If the 80 acres should be divided into two forty-acre lots, and the E. ½ of the S. W. frl. ¼ should be so divided by a north and south line as to give to each owner a like quantity of 50 acres, then the division line in this fraction would be the line 6–7, which is the line contended for by the plaintiffs, and the land in dispute lies between the lines 2–3 and 6–7. The second description in the declaration is included in the other, and is the narrow strip off the west side thereof.

The controversy involves the proper construction of the deeds between Charles and James Richardson, given for the purpose of dividing the land between them. It will be seen by reference to the diagram that a line drawn north and south through the tract equidistant from the east and west lines of the tract would not make an equal division of the quantity of land ; and the proofs show that the east parcel would contain over 9 acres more land than the west parcel, and, instead of each having 50 acres of land, one would have 54 acres and a fraction, and the other would have 45 acres and a fraction.

The apparent meaning of the term "east half" and "west

half" in the deeds between the Richardsons is the east half in *quantity* and the west half in *quantity* : *Au Gres Boom Co. v. Whitney*, 26 Mich. 42; *Dart v. Barbour*, 32 Id. 267; *Heyer v. Lee*, 40 Id. 355.

The description, however, does not stop with the mere mention of the "east half" and "west half," but contains other descriptive words of great significance, namely, "containing 50 acres of land, being the west half of 100 acres of land deeded by Alexina Fullum to Ann Ewing and Charles Ewing, her husband, on the thirteenth of October, 1866." It appears to me that these words are very important as signifying an intention to convey one-half of the quantity of land, namely, 50 acres.

The rule of law is that a deed must be so construed, if possible, that no part shall be rejected. It is also a rule of construction that if the description in the deed be general, followed by one that is particular, the latter limits and defines the terms of the grant.

When it is remembered that the object of the descriptive part of a deed is to define what the parties intended, the one to convey and the other to receive, and that it is a canon of construction that deeds should be construed with reference to the actual state of the property at the time of their execution, if we put ourselves in the place of these brothers, James and Charles Richardson, when they executed the partition deeds of the land conveyed to them, it seems to me that their intent is easily ascertained from the language employed by them in their respective conveyances.

That intent plainly appears to be to divide the land into two equal parcels, so that each should have 50 acres of what had been considered as 100 acres in all. The south boundary of the tract, being the shore line of Klinger's lake, ran from a south-easterly to a north-westerly direction, and consequently the parties knew that it could not be divided by a north and south line running through the middle of the tract, so as to give each 50 acres. The language they employed was apt and proper to divide the tract by a north and south line which should give to each 50 acres, or one-half of the whole.

Such construction must obtain unless there are facts or circumstances appearing at the time which would repel the inference that such was their intention.  I discover no such facts or circumstances in this record.

Grants are to be construed according to the subject-matter, and the natural presumptions arising from their terms, and thus render these an exposition of a rational intention: 3 Washburn, Real Prop. 385.

It was the duty of the court to construe the deed ; and it was the duty of the jury to apply its terms, when thus construed, to the premises in dispute, to see if they were within the description.

The question in dispute here not only involved the construction of the deeds, but the boundaries between the lands as described in the deeds.  It is well-settled law that what constitutes a boundary in a deed is a fact for the jury, and may be proved by any kind of evidence which is admissible to prove any fact.  Actual occupation, ancient reputation, the admission of a party in possession against his interest, agreement of the parties as to the actual location of the boundary, and other evidence which may tend to establish the fact, may be admitted ; and such evidence was admitted upon the trial in the court below.  Both sides went into the question very fully, but the learned judge took the case from the jury, and decided as a question of law upon his construction of the deed.  Upon this point he instructed the jury as follows :

" This case, in the view the court takes of it, is merely a question of law for the court to dispose of.  It will be disposed of upon the construction of the deeds passed between the two Richardsons, dividing this land, conveying the east half to one and the west half to the other, and also upon the papers which are offered in the case, and upon the testimony.  The court, from his experience over this same period of time, and for the last fifteen years, in conveyancing, its knowledge of this word ' half'—' east half,' and ' west half '— as understood in conveyancing, and also from his experience in surveying, thinks it is not there, and cannot be considered to have been, used in these deeds as referring to the quantity

of land, but as referring to a center line drawn from north to south through the whole parcel.

"When the 'west half' is used, it refers to the land west of that center line, and the 'east half' refers to the land east of that center line; and it had no reference to the quantity which might be on one side or the other. The term is frequently used, the east half and the west half, the east half having an acre or an acre and a quarter more land than the west half ; or of the north half and the south half, the north half having more or less land than the south half. It is used with reference to the center line.

"This is the view the court takes, and the construction it places upon the words in these deeds; therefore one party took the land on the west side of the center line, and the other party on the east side of the center line. Taking that half of it, the plaintiffs in this case cannot recover. They acquired no title in their deed to this land, the grantor not owning it at that time. For that reason the plaintiffs cannot recover in this case."

The view the court took of the ordinary signification of the terms "east half" and "west half" is at variance with those taken heretofore by this Court in the cases above cited, and which I think were correct. The effect of those decisions is that the word "half," when used in describing lands, should be understood literally, when nothing appears to the contrary. And the literal signification of the word is "one of two equal parts into which anything may be divided." While there is no universal rule that the word shall be so interpreted, it should receive such interpretation unless the context or surrounding facts and circumstances show that such interpretation would not express the intention of the parties.

In the construction which the circuit judge placed upon the deed, he did not find anything in the context which showed that it was used in any other than a literal sense; but he laid down as the proper meaning of the term in conveyancing, based upon his own experience, as referring to the center line drawn from north to south through the parcel. If this is so, the term must have had a local signification, contrary to that in use elsewhere, and some testimony should have been introduced to show that the parties made use of the term with reference to such local usage.

It is contended by defendants that in surveys of the public lands by the United States government the terms "east half" and "west half" are used, not with reference to the quantity, but with reference to a line which is equidistant from the boundary lines of the parcel subdivided, and that the patents are issued by the government in which the term has the same signification. This is true because it is authorized and especially provided for by act of Congress. A conveyance containing a description of the "east half" or "west half" of a parcel of land which purported to be according to the United States survey would be definite and exclude the idea of two equal quantities, but would convey the idea and intention of fixing the dividing line in accordance with the act of Congress. The conveyance between the Richardsons does not profess to describe the land conveyed in accordance with the United States survey. It is a grant between private parties, in which they have used language indicating an intention to divide the land into two halves according to quantity.

When the case was here before (48 Mich. 634), it was made to turn upon the fact that the present plaintiffs were defendants in a foreclosure suit wherein Pashby was complainant, and these plaintiffs, among others, were defendants, and they had asked for an account of the rents and profits of the premises in controversy as part of the mortgaged premises, and had thus put a practical construction upon the Richardson deeds which they were not at liberty to contend was erroneous.

It now appears that the foreclosure suit was brought to have a deed, absolute in form, bearing date January 30, 1875, declared to be a mortgage, and to stand as security for past indebtedness and future advances, and that the plaintiffs in this suit had levied upon and sold the premises covered by the mortgage deed, and were made defendants in the foreclosure suit as subsequent purchasers or incumbrancers. The title to the property mortgaged and levied upon came through James Richardson. The record before us now shows that the levies upon the land in favor of these plaintiffs were set

aside by the decree in the foreclosure suit. This being done, they were practically out of the case. Where the boundaries of the premises were, and whether any rents and profits had been received by the complainant which should have been applied to the mortgage debt, were matters of no concern to them.

There is nothing in the record of the foreclosure proceedings which shows that the construction of the deed under which Pashby claimed title, or the boundaries of the tract, were in issue or questioned ; and, whether they were or not, Charles Richardson was not a party to that suit, and his rights were not affected by the decree. The levies having been set aside by the decree of court, there was nothing which could prevent the execution creditors from purchasing from Charles Richardson the premises in question if he owned them. They made such purchase after the decree mentioned, and I do not perceive how their rights are affected by that decree. They stand in Charles Richardson's stead, and if he could, before the conveyance to plaintiffs, maintain this action, they can.

There was evidence introduced upon both sides, upon the trial of the case in the court below, tending to show an actual location of the boundary line between James and Charles Richardson, and also between Charles and the grantees of James. This testimony should have been submitted to the jury ; and if they found therefrom that the line agreed upon was located west of the premises described in the declaration, the defendants should have had judgment. If any other line had been agreed upon between the owners as the boundary line, it would govern the case. But if no agreement or practical construction had been put upon the deed in applying it to the subject-matter by the owners, then the division line which would divide the whole tract so as to give to each one-half in quantity is the line which must control the rights of the parties to this case.

Judgment reversed, and a new trial ordered.

The other Justices concurred.