DE GALAN *v.* BARAK.

1. COVENANTS—RIGHTS RUN WITH TITLE.
   All rights of ownership run with title in fee to land except as expressly restricted, either in the immediate conveyance or in the chain of title.

2. SAME—RESTRICTIONS STRICTLY CONSTRUED.
   Restrictions upon otherwise lawful use must be explicit in terms, and doubts arising in construing restrictive provisions will not be solved in favor of limited use of the property.

3. SAME—DWELLING HOUSES—APARTMENTS.
   Restrictions in deeds limiting the erection of buildings to "such as are to be used exclusively for residence purposes," would not be offended by the erection of an apartment house, but where the character of such residence buildings is defined in the restriction as dwelling houses of not less than two stories in height and costing not less than $1,500, an apartment house would offend.

4. SAME—WAIVER OF RESTRICTIONS.
   Failure of property owners in a block which retains almost in its entirety its restricted character, to prevent the erection of a four-family apartment and a semi-bungalow at the opposite end of the block, in violation of the restrictions, *held*, not to waive their right to enjoin the erection of a large apartment house in their near neighborhood, in violation of restrictions, when it threatens them with direct financial injury.

Appeal from Wayne; Hunt (Ormond F.), J. Submitted April 24, 1923. (Docket No. 23.) Decided June 4, 1923.

Bill by Frederick S. DeGalan and others against Heyman Barak to enjoin the violation of building restrictions. From a decree for plaintiffs, defendant appeals. Affirmed.

The question of multiple residence structures as violation of restrictive covenants is discussed in notes in 45 L. R. A. (N. S.) 726; 18 A. L. R. 451.

*Harold F. Coyle* (*Alfred J. Murphy*, of counsel),
for plaintiffs.

*William Henry Gallagher*, for defendant.

WIEST, C. J.   This is an injunction bill to restrain
a threatened violation of building restrictions.   Plain-
tiffs are owners of high-grade single dwelling houses
on Carter avenue, in the block between Lawton and
Wildemere avenues, city of Detroit.   Their lots and
defendant's lots are in the Wm. L. Holmes Sub-
division.   The plat of this subdivision laid out 376
lots for residence purposes on Carter, Gladstone and
Hazelwood avenues.   All lots in the subdivision are
subject to the following restrictions:

"Provided always and these presents are upon this
express condition that said second party, his heirs and
assigns   *   *   *   shall neither erect nor suffer to be
erected thereon any buildings except such as are to
be used exclusively for residence purposes and neither
to place nor erect nor suffer to be placed or erected
thereon any dwelling house of less than two stories
in height or costing less than $1,500.00, and that no
part of any building on said piece or parcel of land
shall be placed within fifteen feet of the street line at
the front thereof."

In June, 1922, defendant purchased three lots at the
southeast corner of Carter and Wildemere avenues,
subject to such building restrictions, took advice of
an attorney as to his rights, and at the time the bill
was filed had excavated for the foundation of a three-
story 24 apartment house on the three lots, with
the front of the excavation 15 feet from the street
lot line.   In the block are 50 lots.   Upon 40 lots are
two-story single dwelling houses, standing 25 feet
back from the street line with porches in front thereof.
On the northwest corner of Carter and Lawton
avenues there is a four-family apartment standing

back 23 feet from the street line, and opposite, on the southwest corner, a story and a half semi-bungalow. Several apartment houses and two-family flats have been erected on Gladstone and Hazelwood avenues. Plaintiffs claim that, under the restrictions, only single dwellings, occupying but one lot, can be constructed, and by reason of common adoption of a plan of setting houses in the block back 25 feet from the street line all new houses must conform to such building line.

Defendant contends that the restrictions do not prevent a dwelling house from occupying more than one lot; that an apartment house is a building "used exclusively for residence purposes," and is, therefore, a "dwelling house" within the terms of the restrictions; that the general plan of improvement with reference to location of buildings on lots was not established by the evidence, and that the right to insist upon the restrictions has been lost by permitting the four-family apartment to be erected in the block and apartment houses and flats to be erected on other streets within the restricted area.

The decree entered in the circuit enjoined defendant

"from erecting upon any one of said lots anything except a single dwelling house to be used for a single family, said single dwelling house to be erected on the lots above mentioned, with its front line not nearer than 25 feet from the front line thereof, that said defendant, Heyman Barak, be restrained from using more than one lot for a single building."

The case is here on appeal by defendant. All rights of ownership run with title in fee to land except as expressly restricted, either in an immediate conveyance or in the chain of title. Restrictions upon otherwise lawful use must be explicit in terms. Doubts, if any, arising in construing restrictive provisions will not be solved in favor of limited use of the property. *Casterton* v. *Plotkin*, 188 Mich. 333;

*Hill* v. *Rabinowitch,* 210 Mich. 220; *Teagan* v. *Keywell,* 212 Mich. 649.    Having these general principles in mind we will construe the restrictions in question.

The restrictions clearly limit the erection of buildings to "such as are to be used exclusively for residence purposes," and defines such buildings as dwelling houses, not less than two stories in height and costing not less than $1,500.    Had the restrictive provisions stopped with limiting the erection of buildings to "such as are to be used exclusively for residence purposes," an apartment house would not offend. *Casterton* v. *Plotkin, supra; Teagan* v. *Keywell, supra.* The restrictions, however, do not stop there, but go on to fix the character of such residence buildings, as dwelling houses of not less than two stories in height and costing not less than $1,500.    This clearly discloses the purpose to provide a district where lots would have single dwelling houses, and, therefore, an apartment does offend.    *Bagnall* v. *Young,* 151 Mich. 69; *Schadt* v. *Brill,* 173 Mich. 647 (45 L. R. A. [N. S.] 726); *Kingston,* v. *Busch,* 176 Mich. 566; *Rosensweig* v. *Rose,* 201 Mich. 681.

The restrictions bar the proposed apartment house. This renders it unnecessary to determine whether the proposed apartment building, or any dwelling house, must be erected 25 feet back from the street line, or more than one lot may be used for a single dwelling house.

Has there been a waiver of the restrictions?    Failure to prevent the erection of the four-family apartment and the semi-bungalow, at the east end of the block, has not abrogated the restrictions nor deprived plaintiffs of the right to prevent further and nearer violations and greater damage to their properties. The evidence discloses that the block in question retains, almost in its entirety, the character intended

and fixed by the restrictions.     The claimed waiver is not made out.     *Rosenzweig* v. *Rose, supra.*

Violations in other blocks and on other streets did not require plaintiffs to run to court to prevent them or, for failure to do so, remain supine when other and nearer violations of the restrictions threatened them with direct financial injury.

The questions of location of dwelling houses, with reference to the street or front lot lines, and whether more than one lot may be used for a single dwelling house are moot on this record and, therefore, not decided.     With these exceptions the decree entered in the circuit is affirmed, with costs to plaintiffs.

FELLOWS, MCDONALD, CLARK, BIRD, SHARPE, MOORE, and STEERE, JJ., concurred.