[Civ. No. 21209. Second Dist., Div. Two. Dec. 14, 1955.]

MILTON WEBER et al., Respondents, v. STELLA A.
GRANER et al., Defendants; CHARLES H. TARBOX
et al., Appellants.

Herbert T. Silverberg for Appellants.

Charles A. Bank for Respondents.

FOX, J.—By this action plaintiffs seek a declaration that the deed restrictions covering their property do not prohibit its use for apartment house purposes. From a judgment in their favor defendants Tarbox appeal.

The case was submitted on an agreed statement of facts.

The property involved is known as the Olivo Heights Tract, which consists of 10 lots on the north of Hillside Avenue comprising the block between La Brea Avenue to the east and Fuller Avenue to the west, in the Hollywood area in the city of Los Angeles. The lots are numbered 1 to 10, inclusive, starting from Fuller Avenue. Plaintiffs own the easterly 50 feet of Lot 7 and all of Lots 8, 9 and 10, which extend to La Brea. The total frontage of the tract on Hillside is 794.46 feet, of which plaintiffs own 287.78 feet. Lot 10, which is the northwest corner of Hillside and La Brea, has a depth of 208.37 feet on the latter thoroughfare.

On April 20, 1904, the owner, Lizzie T. Hay, conveyed the entire tract to five different grantees. Identical restrictions appear in each deed, the pertinent portions thereof reading as follows:

"Subject however, and this conveyance is accepted by the party of the second part, upon the following express condition to wit:

"(a) That the above premises are sold, and are to be occupied for residence purposes only, and nowise for business purposes:

"(b) That any building constructed for or to be used as a dwelling house and erected or placed on said premises at any time hereafter, shall cost not less than three Thousand Dollars—$3,000.00—

"(c) That every such dwelling house shall be located so that the extreme front projection of such building or structure shall be not less than sixty—60—feet distant from the outside or Street line of the curb in front of said lot;

"(d) That no stable or out building shall be located on said premises nearer than One hundred Twenty-five—125—feet to said curb.

"(e) That for any violation of either or any of the foregoing conditions the title and rights of possession and occupancy of the grantee or any of her successors in and to said premises shall thereupon (as soon as entry and demand for possession is made by said party of the first part or her authorized agent), wholly cease and terminate and thereupon be and become vested in the party of the first part, her heirs or assigns;

"(f) That the provisions of the foregoing conditions subsequent shall in addition to the foregoing termination of ownership in favor of said grantor, also operate in favor of each and every third party,—being the owner or entitled to the

possession of any other lot or lots in said tract,—so far as to entitle such third party or parties at any time to restrain or enjoin by proper action the further or any threatened, doing of any act in violation of any of the foregoing conditions.''

This tract was originally zoned for single family residence. In July, 1953, plaintiffs' property was rezoned R-3, which permits ''group dwelling'' and ''multiple buildings.'' The zoning of none of the other lots has been changed from R-1[1] and each is improved with a single family residence. These were built between ''prior to 1914'' and 1927. There was a large private residence on plaintiffs' property but it was torn down in 1953 soon after they purchased it.[2]

In *Hannula* v. *Hacienda Homes, Inc.*, 34 Cal.2d 442, 444-445 [211 P.2d 302, 19 A.L.R.2d 1268], the court stated: ''Restrictions on the use of land will not be read into a restrictive covenant by implication, but if the parties have expressed their intention to limit the use, that intention shall be carried out, for the primary object in construing restrictive covenants, as in construing all contracts, shall be to effectuate the legitimate desires of the covenanting parties.'' ▮ The guiding rules in achieving this purpose are clear: (1) A grant is to be construed in like manner with contracts in general (Civ. Code, § 1066); (2) the language of the instrument must determine its interpretation where it is clear and explicit (Civ. Code, § 1638; *Hensler* v. *City of Los Angeles*, 124 Cal.App.2d 71, 77 [268 P.2d 12]); (3) technical rules of construction will not be employed if the intention of the parties can be plainly discovered from the four corners of the instrument (*Paddock* v. *Vasquez*, 122 Cal.App.2d 396, 400 [265 P.2d 121]); ▮ (4) ''the intention of the parties is to be gained from a consideration of the entire instrument though the immediate objective of the inquiry is the meaning of an isolated clause, taking into consideration every provision,

---

[1]R-1 zoning limits the use of a lot to a single family residence.

[2]As to the zoning and development of adjacent property the agreed statement reveals that the south side of Hillside Avenue (directly across the street from this tract) is improved with private residences. The lot, however, on the southwest corner of Hillside and La Brea, fronting on the latter but in depth just across Hillside from plaintiffs' property, has been reclassified from Zone R-1 to Zone R-3. The property on the east side of La Brea, north of Hillside and across the street from plaintiffs' Lot 10, is zoned R-4 (multiple dwelling) and is improved with a two-story, 10-unit apartment which covers the entire block. The tract is bounded on the north by private estates, the entrances to which are located on La Brea and Fuller Avenues. The west side of Fuller Avenue is in Zone R-1.

clause and word, whether of grant, or description, or of qualification, exception or explanation'' (*Paddock* v. *Vasquez, supra*) ; ▆ (5) nontechnical words in a conveyance are to be given their ordinary and plain meaning unless the context shows they are used in a different sense (*Wood* v. *Mandrilla,* 167 Cal. 607, 609 [140 P. 279]) ; ▆ (6) restrictive covenants are to be strictly construed against limitations upon the free use of property and will not be extended by implication (*Wing* v. *Forest Lawn Cemetery Assn.,* 15 Cal.2d 472 [101 P.2d 1099, 130 A.L.R. 120] ; *Hannula* v. *Hacienda Homes, supra*). Tested by these rules, we are of the opinion that the restrictions embodied in the deed clearly set forth the intention of the grantor in plain, simple and concise language, obviating resort to extrinsic aids to ascertain such intention.

Turning now to the language of the deed, the initial provision (paragraph (a)) is that the premises are ''to be occupied for residence purposes only, and nowise for business purposes:'' The parties here state the use to which the property may be put. They define that use both affirmatively —''to be occupied for residence purposes only''—and negatively—and not for business purposes. They have used very simple and unambiguous language to express the use to which this property may be put and the limitation thereon.

Plaintiffs' proposed improvement consists of a two-story building comprising 48 apartments or separate residential suites in which families will live. Thus these premises are ''to be occupied for residence purposes,'' and this is so whether the structure is occupied by one family or a number of families. The word ''residence'' has reference to the use or mode of occupancy to which the premises may be put. If it had been intended that the improvements to be placed on this property were to be for the use of one family only, words indicating such an intention undoubtedly would have been used, as is frequently done, such as ''a single residence,'' ''a private residence,'' ''a private home,'' ''a private dwelling,'' ''a single family dwelling,'' or ''a single dwelling house.'' (*Jernigan* v. *Capps,* 187 Va. 73 [45 S.E.2d 886] ; *Hunt* v. *Held,* 90 Ohio St. 280 [107 N.E. 765, L.R.A. 1915D 543, Ann.Cas. 1916C 1051].)

The words ''for residence purposes only'' in the deed before us were specifically used in contradistinction to business or commercial purposes. Had those words stood alone, the latter uses would be impliedly excluded. But the grantor obviously did not want to leave such an excluded use to

implication, hence we have the express provision that the premises are to be occupied in "nowise for business purposes." It is apparent that the grantor took pains to define the use to which the property could be put and the limitations on such use. It is therefore significant that no limitation, restriction or qualification is placed upon the character or type of "residence purposes" to which the property may be devoted.

■ It is the general rule that a restriction using the broad phrase "for residence purposes only" merely limits the use of the property to living purposes as distinguished from business or commercial use and does not preclude the erection of an apartment house designed exclusively for residential occupancy. (*Baker* v. *Smith*, 242 Iowa 606 [47 N.W.2d 810] ; *Bear* v. *Bernstein*, 251 Ala. 230 [36 So.2d 483] ; *Courtney* v. *Hunter*, 159 Ga. 321 [125 S.E. 714] ; *Brandenburg* v. *Country Club Bldg. Corp.*, 332 Ill. 136 [163 N.E. 440] ; *McMurtry* v. *Phillips Inv. Co.*, 103 Ky. 308 [45 S.W. 96, 40 L.R.A. 489] ; *Yorkway Apts., Inc.* v. *Dundalk Co.*, 180 Md. 647 [26 A.2d 398] ; *Casterton* v. *Plotkin*, 188 Mich. 333 [154 N.W. 151] ; *Teagan* v. *Keywell*, 212 Mich. 649 [180 N.W. 454] ; *Miller* v. *Ettinger*, 235 Mich. 527 [209 N.W. 568] ; *Huntington* v. *Dennis*, 195 N.C. 759 [143 S.E. 521] ; *Jernigan* v. *Capps*, 187 Va. 73, *supra*; *Hunt* v. *Held*, 90 Ohio St. 280, *supra*. See also Ann. in 14 A.L.R.2d 1376, at pp. 1403-1404.) Our analysis of the language in paragraph (a), which is definitive of the use to which this property may be put, demonstrates that it falls squarely within the foregoing rule and sanctions the type of improvement plaintiffs propose to make.,

Defendants contend that the restrictions in the deed must be interpreted as limiting the use of the property solely to single homes. They rely upon *Walker* v. *Haslett*, 44 Cal.App. 394 [186 P. 622], and certain authorities from other jurisdictions to which we will presently advert. The Walker case is clearly inapposite. The restrictive covenant in that case provided, in its pertinent part, that "no building or structure whatever, other than *a* first class *private residence* . . . shall be erected . . .'' (Italics by court.) Defendants erected a building that had "two separate and distinct parts" in each of which a family could live "entirely separate and apart from each other." The court granted an injunction against its use, observing that it actually constituted a double building or two residences. As such, the court held it was violative of the restrictive covenant in that (1) the term "a" employed in the covenant meant that only one, single, resi-

dence could be built; or (2) assuming the covenant did not restrict the grantee to but one building, a house designed for the accommodation of more than one family could not be deemed a *private* residence. It is patent that the decision in the Walker case turned on the existence of a specific limitation in the restrictive covenant to *a private residence*, a facet which is so conspicuously absent in the deed here involved.

Because the Walker case relied upon the Michigan case of *Schadt* v. *Brill*, 173 Mich. 647 [139 N.W. 878, 45 L.R.A.N.S. 726], as authority for the proposition that a restriction limiting the use of property to "a" dwelling meant only a single dwelling unit could be built thereon, defendants cite the Schadt case as the progenitor of a "Michigan rule" which allegedly supports their position and is applied in such cases as *DeGalen* v. *Barak,* 223 Mich. 378 [193 N.W. 812]; *Rosenzweig* v. *Rose,* 201 Mich. 681 [167 N.W. 1008]; *Harris* v. *Roraback,* 137 Mich. 292 [100 N.W. 391, 109 Am.St.Rep. 681], as well as certain others. All of these cases, however, are merely illustrative of the Michigan holding that a restriction which limits the use or construction of a building on premises to "a dwelling house" means a building designed as a single dwelling to be used by one family. But where, as in the instant case, the language creating the restrictive covenant is couched in such terminology as "for residence purposes only" or words of like import, the Michigan courts, in conformity with the majority view, hold that the building and use of a multifamily residence is not thereby inhibited. (*Casterton* v. *Plotkin, supra*; *Teagan* v. *Keywell, supra*; *Miller* v. *Ettinger, supra*; *Tillotson* v. *Gregory,* 151 Mich. 128 [114 N.W. 1025].) That the dichotomy between the two lines of Michigan cases is more apparent than real, and that they rest on the fundamental distinction established in that jurisdiction between the expressions "for residential purposes" and "a dwelling house" is pointed up in the case of *Teagan* v. *Keywell, supra,* in which plaintiffs sought to enjoin the erection of a 41-unit apartment building. The restrictive covenant provided, in part, that "no building shall be erected . . . except for residence purposes only, which shall be at least two stories in height and shall cost at least $2,500, and set at least fifty (50) feet back from the front line." Plaintiff argued that this covenant prohibited the erection of the proposed apartment house, citing many of the cases relied on by defendants herein. In rejecting this contention, the court stated, quoting from *Casterton* v. *Plotkin, supra*: "A convey-

ance of a city lot with the restriction that it should be used for residence purposes only . . . did not exclude the erection of an apartment house; and no further or different limitations to those expressed in the deed might be implied" [p. 456]. In distinguishing the other Michigan cases, the court noted that "there is a clear distinction between a restriction that property shall be used for 'residence purposes only' and one where the restriction is confined to a 'dwelling house.' We think this question is controlled by *Casterton* v. *Plotkin, supra*, and that under the restriction defendant had a right to build a 41-unit apartment building upon the premises in question."

In like manner, other cases cited by defendants in support of their position are not apropos because of the difference in the restrictive language. Examples are *Green Ave. Apts.* v. *Chambers*, (Tex.Civ.App.) 239 S.W.2d 675 ("only one dwelling house"); *Pearson* v. *Adams*, 50 Can. S.C. 204 ("a . . . dwelling house"); *Flaks* v. *Wichman*, 128 Colo. 45 [260 P.2d 737] ("for *private* residence purposes"); *Arnoff* v. *Chase*, 101 Ohio St. 331 [128 N.E. 319] ("one house only on each lot"); *Powers* v. *Radding*, 225 Mass. 110 [113 N.E. 782] ("but one dwelling house"); *Green* v. *Gerner*, (Tex.Civ.App.) 283 S.W. 615 ("no building other than one residence"). Without in any way commenting on the propriety of the holdings in those cases,[3] it suffices for present purposes merely to note the disparity between the particular language quoted and that contained in the deed before us.

 We now come to a consideration of paragraph (b), which provides: "That any building constructed for or to be used as a dwelling house and erected or placed on said premises at any time hereafter, shall cost not less than three Thousand Dollars—$3,000.00—" Defendants take the position that the words used in this paragraph "can be meaningful only if construed as prohibiting apartment buildings and other multiple dwellings." This proposition is not sound. This paragraph deals with a specific subject-matter. It prescribes minimum building cost. It neither diminishes nor purports to limit or qualify the use to which any structure may be put.

---

[3] In 14 A.L.R.2d 1381 and 1384, the annotator states the courts' have generally held a simple restriction to a "dwelling" or "dwelling house" does not bar the erection or use of an apartment house. Numerous authorities are cited at page 1384. The most recent case so holding is *Baker* v. *Smith*, 242 Iowa 606 [47 N.W.2d 810, 812]. This is not a question, however, which is essential to a determination of the instant case.

The phraseology "any building . . . to be used as a dwelling house" simply defines the class of buildings to which the minimum cost provision applies and refers to the uses authorized in paragraph "a," i. e., for residence purposes, and requires that any such building shall cost not less than the designated amount. The essential purpose of this provision is merely to fix the minimum cost of each and every building on the lot devoted to residential purposes as distinguished from structures used for nonresidential purposes.

In *Baker* v. *Smith,* 242 Iowa 606 [47 N.W.2d 810], the essential restriction, as here, limited the use of the property to "residence purposes exclusively." The third restriction read: "No residence or dwelling house shall be erected on said lot or lots hereby conveyed . . . costing less than $5,000 . . . exclusive of other buildings and improvements . . ." In holding an apartment house could be erected on the premises, the court stated: "Plaintiffs assert also the minimum cost provision in the Third restriction indicates an intent to restrict to single family residences. The majority rule is to the contrary." (See also *Meredith* v. *Danzer,* 142 Md. 573 [121 A. 245]; *Huntington* v. *Dennis,* 195 N.C. 759 [143 S.E. 521]; *Arnoff* v. *Williams,* 94 Ohio St. 145 [113 N.E. 661].)

Defendants state "It seems clear that the parties were thinking solely in terms of single houses and that it was never intended that apartment buildings or other multiple unit dwellings should be permitted under the restrictions." If they had so intended they should have so stated and it would have been a simple matter to express such intention. The controlling factor is the expressed intention of the parties. Intention unexpressed is unavailing. As stated by the court of appeals of New York in *Bennett* v. *Petrino,* 235 N.Y. 474 [139 N.E. 578], where the restrictions were closely analogous to those herein, "If the parties drawing these restrictions had intended the words 'residence' or 'dwelling' . . . to exclude an apartment it would have been a very simple matter to have said so. No misunderstanding could then have arisen. One private dwelling or dwelling for one family would have made the restriction very clear." Also, pertinent is the statement in 26 Corpus Juris Secundum, Deeds, pages 517-518, section 163 (citing numerous authorities), that a restriction will not "be enlarged or extended by construction or implication beyond the clear meaning of its terms even to accomplish what it may be thought the parties would have

desired had a situation which later developed been foreseen by them at the time when the restriction was written.''

Paragraph (c), which provides that ''every such dwelling house shall be located so that the extreme front projection of such building or structure shall not be less than sixty—60—feet distant from the outside or street line of the curb in front of said lot'' does not assist defendants' cause. It simply fixes a specific setback (which plaintiffs propose to observe) for ''every'' building on the property that is ''to be occupied for residence purposes.'' That is its sole purpose. It neither undertakes to limit the number of residential buildings that may be placed on the lot nor does it purport to limit or diminish the use thereof as defined in paragraph (a).

There is nothing in paragraph (d)[4] which militates against plaintiffs' right to erect an apartment building. It merely prescribes the setback requirements for any stable or out building incidental to the residential use of the property. There is no suggestion that these buildings are to be designed only for the accommodation of a single family.

Defendants urge that ''the subsequent acts of the property owners in the tract indicate an intention to limit the use of the tract to single homes'' showing the practical construction placed on the restrictions by the parties. In developing this argument defendants state in their brief, ''We are of the opinion that the restrictions here involved are sufficiently clear that it is unnecessary to look to the practical construction placed on them by the parties after 1904.'' We agree.

As stated in *Wood* v. *Mandrilla,* 167 Cal. 607, 615 [140 P. 279], ''This rule as to the practical construction of a contract applies, however, only when the language on the face of the contract is doubtful, uncertain, or ambiguous, and *there is nothing of that kind in this deed.''* (Emphasis added.)

But even if an extrinsic aid in interpretation were proper in this instance, the fact that only single family residences were maintained in the tract would not be helpful in construing the restrictions. Under the zoning regulations of the city the owners of the other lots in the tract had no choice but to build single family houses. Hence their act and conduct in building single family houses in the intervening years is utterly without significance so far as any practical construction of the deed is concerned.

The defendants would have us read into the restrictions

---

[4] ''(d) That no stable or out building shall be located on said premises nearer than One Hundred Twenty-five—125—feet to said curb.''

a limitation confining the use of the lots to a single family residence. As they find no such words in the restrictions themselves, the defendants necessarily rely upon the implication which is to be drawn from the language used. However desirable it may be for defendants to prohibit the erection of an apartment house, such a result can only be accomplished when the agreement of the parties permits it. We are confined to the words of the restrictions and must give them their natural meaning interpreted in the light of the decided cases. There is no way in which this court can extend by implication, or enlarge by construction, the plain terms of these restrictive covenants. To do so would be violative of the fundamental principle that restrictions on the free use of property may not be supplied by unwarranted implications.

The purported appeal from the order dismissing plaintiffs' motion for a new trial is dismissed.

The judgment is affirmed.

Moore, P. J., and Ashburn, J. pro tem.,* concurred.

Appellants' petition for a hearing by the Supreme Court was denied February 8, 1956. McComb, J., did not participate therein.

*Assigned by Chairman of Judicial Counci'.