### MILLER *v.* ETTINGER.

1. COVENANTS — BUILDING RESTRICTIONS — APARTMENT BUILDING NOT FORBIDDEN BY RESTRICTION TO RESIDENCE PURPOSES.

   The restriction in a deed conveying two city lots that they "shall be used solely for residence purposes" does not forbid the erection of an apartment house thereon.[1]

2. SAME — INEQUITABLE TO ENFORCE RESTRICTION VIOLATED BY LARGE PERCENTAGE OF PROPERTY OWNERS.

   Where a large percentage of the property owners of a subdivision violated restrictions as to the space between buildings and lot lines by building their own residences on more than one lot, it would be inequitable to enforce said restrictions against the owner of two lots who proposes to build thereon an apartment building.[2]

3. SAME—OWNER OF LOT BOUND ONLY BY RESTRICTIONS IN DEED.

   That property owners in a subdivision restricted to residence purposes only had adopted the general plan of erecting single residences only, with certain spaces between each building, did not deprive the owner of two lots of his right to erect an apartment building thereon; he being bound only by the restrictions in his deed.[3]

---

[1]Deeds, 18 C. J. § 452; [2]Id., 18 C. J. § 468; [3]Id., 18 C. J. § 459 (Anno).

For multiple residence structures as violative of restrictive covenants, see notes in 45 L. R. A. (N. S.) 726; L. R. A. 1918C, 873; 18 A. L. R. 451.

Appeal from Wayne; Mandell (Henry A.), J. Submitted April 20, 1926.    (Docket No. 163.)    Decided July 1, 1926.

Bill by Lee A. Miller and others against Phillip Ettinger and another to restrain the violation of building restrictions.    From a decree for defendants, plaintiffs appeal.    Affirmed.

*Joslyn, Joslyn & Joslyn,* for plaintiffs.

*William E. Tarsney (Lloyd L. Axford,* of counsel), for defendants.

SHARPE, J. Collingwood avenue, extending from Twelfth street on the east to Roosevelt Field on the west, runs through the center of Clements and Oakman's subdivision in Detroit.    The plat shows about 40 lots on each side of the avenue.    Twelfth street is a main thoroughfare.    The first three lots in the subdivision west of this street were evidently intended for business purposes, and are restricted only by a provision that any building erected thereon shall not be located nearer than 20 feet to the lot line of the avenue.    The deeds to all the other lots contained the following restriction:

"Said lots shall be used solely for residence purposes. No building the cost of construction of which shall be less than three thousand dollars shall be erected on said lots.    No building shall be erected nearer than thirty feet from the front line of said lot, nor nearer than two feet to the west line thereof, nor nearer than four feet to the east line thereof."

Single residences have been built upon nearly all of the lots so restricted, of an average value of about $15,000.    The lots as platted were but 30 feet in width.    It appears that but 15 of the residences so built were located on one lot.    The others are constructed on parcels of either 35 or 40 feet, and, in

one instance, of 60 feet in width. The defendants are the owners of lots 81 and 82 on the north side of the avenue. These lots are the next on the plat to the 3 lots designed for business purposes. They are subject to the restrictions heretofore quoted.

Defendants started to erect a three-story apartment building on these lots, the west wall of which would be located 2 feet east of the westerly line of said lot 81 and the east wall directly on the east line of lot 82, whereupon plaintiffs filed the bill herein to enjoin such erection. The trial court entered a decree enjoining the defendants from building upon more than 54 feet frontage of the two lots, requiring a 2-foot space to be maintained upon one side and a 4-foot space upon the other. From this decree plaintiffs have appealed.

1. The restriction that the lots "shall be used solely for residence purposes" does not forbid the erection of an apartment house thereon. *Casterton* v. *Plotkin,* 188 Mich. 333; *Teagan* v. *Keywell,* 212 Mich. 649; *De Galan* v. *Barak,* 223 Mich. 378; *Farley* v. *Finn,* 226 Mich. 205.

2. The restrictive provision as to the space between buildings and lot lines has been violated by such a large percentage of the property owners by their own residences covering more than one lot that it would be inequitable to enforce it against defendants and restrain them from building on more than one lot. *Teagan* v. *Keywell, supra.*

3. The further claim of plaintiffs' counsel is thus stated:

"Regardless of the wording of the restrictions in the abstract, subsequent events by legal implication imposed additional restrictions, namely, restricting the erection of any building on Collingwood avenue except a single residence, with a total space of at least six feet between each improvement and the side lot lines on thirty-foot parcels, of at least ten feet on

235—Mich.—34.

thirty-five to forty-foot parcels and of twelve feet minimum, where the residence is erected on two lots as one parcel."

Counsel cite and quote from many of our decisions to sustain their contention. This court has gone far in protecting the owners of homes in residential districts from the inroads of business enterprises. What has been said, however, must be considered in the light of the facts as they appear in the several cases. *Putnam* v. *Ernst*, 232 Mich. 682. Owners of property have rights therein which must be respected. It is only under unusual circumstances that its use will be restricted other than by the provisions in the conveyance on which the title rests.

There can be no doubt that the owners of lots 81 and 82 might have built an apartment house thereon when the lots were first purchased and before the plaintiffs and others had erected single residences on their lots without any violation of the restrictions contained in the deeds they had obtained therefor. *Teagan* v. *Keywell, supra.* In *Casterton* v. *Plotkin, supra,* Mr. Justice STEERE, speaking for the court, said:

"Clearly the restrictions which she imposed would not have been violated had the purchaser then proceeded to erect upon the lot an apartment house for residence purposes solely. He was under no obligation to improve the property. Allowing the lot to remain vacant imposed no duty upon the owner to watch and object to what others were doing with other lots in the subdivision, in order to protect this vested right. Other purchasers were, in fact, using their lots for residential purposes in harmony with the very use to which lot 66 was restricted. No court has gone so far as to intimate a rule that the mere building of single dwellings or the adoption of any particular style of architecture by others in a block is notice to the owner of a lot only restricted to residential purposes that he must do likewise or protest in order to protect his rights."

The facts in that case were quite similar to those here presented. Plaintiffs there relied on a general plan, initiated, maintained and acted upon by those who had built homes in the subdivision, but it was held that defendant was bound only by the specific restriction contained in his deed.

The decree is affirmed, with costs to defendants.

BIRD, C. J., and SNOW, STEERE, FELLOWS, WIEST, CLARK, and McDONALD, JJ., concurred.