DAVIS *v.* SARVARI.

1. COVENANTS—RESTRICTIONS—RESIDENCE PURPOSES.
 Restriction in deed limiting use of property solely to residence purposes does not forbid erection of multiple dwelling or apartment house.

On application of restrictive covenants to multiple residence structures, see annotation in 45 L. R. A. (N. S.) 726; L. R. A. 1918C, 873.
 As to what part of structure must be beyond the line to constitute violation of building restriction, see annotation in 52 L. R. A. (N. S.) 1044; 1 A. L. R. 329.

2. SAME—STREET SUBSEQUENTLY EXTENDED NOT AFFECTED BY RE-
   STRICTIONS.

    Restriction in deed forbidding erection of building within cer-
   tain distance of front line of lot does not affect street sub-
   sequently extended diagonally through subdivision.

3. MUNICIPAL CORPORATIONS—BUILDING CODE—RESTRICTIONS.

    Under Act No. 323, Pub. Acts 1921, tit. 1, art. 2, § 12, as
   amended by Act No. 371, Pub. Acts 1925, the owner of a
   corner lot abutting on an alley 20 feet wide is within his
   rights in building apartment house within four feet of the
   alley and six feet from side line.

Appeal from Wayne; Moynihan (Joseph A.), J.
Submitted January 17, 1930. (Docket No. 3, Calen-
dar No. 34,484.) Decided April 7, 1930. Rehear-
ing denied June 2, 1930.

Bill by Edward S. Davis and others against
Magno Sarvari to enjoin violation of building re-
strictions. From a decree for plaintiffs, defendant
appeals. Reversed, and bill dismissed.

   *Abbott & Coulter,* for plaintiffs.

   *Anthony Nelson* (*Edmund E. Shepherd,* of coun-
sel), for defendant.

BUTZEL, J. The building restrictions affecting the
lots in the Clements and Oakman subdivision in the
city of Detroit have been considered by this court in
*Miller* v. *Ettinger,* 235 Mich. 527, and in *Sullivan* v.
*Playfair Realty Co.,* 238 Mich. 274. A general de-
scription of the property and neighborhood is more
fully set forth in the opinions. The property was
subdivided in 1910. It is bounded on the east by
Twelfth street, on the west by Roosevelt field, now
occupied by the Roosevelt school buildings, and on
the north and south respectively by the alley north
of Lawrence avenue and the alley south of Colling-

wood avenue. As originally platted, there were no
north or south streets running through the subdivi-
sion. In 1922, however, Fourteenth avenue, a wide
thoroughfare running north and south, was extended
by condemnation proceedings so as to traverse the
subdivision. The avenue makes a decided jog as it
approaches Lawrence avenue, at which particular
section it extends in a northeasterly and south-
westerly direction. As it approaches Lawrence
avenue it borders that part of lots 112, 111, and 110
not taken by the city in the condemnation proceed-
ings for its extension. This property at the south-
east corner of Lawrence and Fourteenth avenues is
known as defendant's property. It comprises the
remaining portions of lots 112, 111, and the west
12 feet of 110 not taken by the city. The depth of
this corner lot on the east side was 122 feet. Lots
112 and 111 are each 30 feet wide, so that with the
westerly 12 feet of lot 110, the total width of the
property along the alley is 72 feet. Upon the ex-
tension of Fourteenth avenue it was found necessary
to run the easterly boundary of the avenue diagon-
ally across lots 112, 111, and the westerly 12 feet of
110, beginning at a point on the westerly line of lot
112, 20.3 feet north of the alley, and then running to
a point on Lawrence avenue 5.5 feet west from the
easterly line of lot 110. Defendant's property now
resembles somewhat a right-angle triangle with a
quadrangular piece of property annexed to the
southerly side thereof. It is bounded on the south
by the alley between Lawrence and Collingwood
avenues, on the east by a line parallel with and 12
feet east of the easterly line of lot 111, on the west
by the most southerly 20.3 feet of the westerly line of
lot 112 (now a part of Fourteenth avenue), on the
northwesterly side by Fourteenth avenue. Both the

westerly and northwesterly sides of the property abut on Fourteenth avenue. As only the west 12 feet of lot 110 are contained in this parcel, the apex or most northerly point of the triangle does not extend to Lawrence avenue, but lies nearly 20 feet south of the street line. The easterly line is 102 feet in length, the northwesterly line about 108 feet, the westerly line 20.3 feet, and the southerly or alley line 72 feet. The sidewalk along Fourteenth avenue does not follow the contour of this parcel, but runs from its intersection with Lawrence avenue in a straight line southwesterly to the junction of the alley and Fourteenth avenue. The subdivision is fairly well built up, but there are still a number of vacant lots. A large majority of the dwellings are substantial single houses averaging in value about $20,000. However, there are three four-family, and two two-family dwellings on Lawrence avenue, in the block in which defendant's property is located. One of the four-family flats is on the north side of Lawrence avenue within 150 feet of Fourteenth avenue; the other flats are near Twelfth street. On Collingwood avenue, 90 feet from Twelfth street, there is a 14-family apartment house, which was the subject of litigation in *Miller* v. *Ettinger, supra,* where a decree restraining the construction of an apartment house was denied.

Plaintiffs seek to restrain defendant from erecting a three-story 19-family apartment building on his property. They claim that the restrictions permit the building of only a single dwelling house on the property; that the front line of defendant's property now abuts on Fourteenth avenue, and, inasmuch as the restrictions do not permit the erection of a building within 30 feet from the front line of the lot, defendant may not build within 30 feet from

Fourteenth avenue, the new front line of the property; that defendant must also observe the State building code, which forbids a building within 14 feet of the east line of his property. One of the plaintiffs owns the property immediately east of defendant's property, and it would be to his advantage to have as large a distance as possible between his own home and the building that defendant proposes to erect. The lower court upheld plaintiffs' contentions and entered a decree in accordance therewith. Defendant has appealed to this court.

There are no restrictions set forth in the plat of the property. The restrictions in the subdivision are contained in the deeds and contracts. They limit the use of the property to residence purposes. Plaintiffs claim that the case of *Sullivan* v. *Playfair Realty Co., supra,* and that of *Signaigo* v. *Begun,* 234 Mich. 246, are controlling and sustain their position. In the case of *Sullivan* v. *Playfair Realty Co., supra,* the restriction was considered in reference to the corner of Lawrence avenue and Twelfth street, where the owner of the property was enjoined from building a garage and store building. It was held in that case that where a subdivider had sold property subject to general restrictions limiting its use to residence purposes, and subsequently bought back a corner lot, he could not thereupon release the restrictions by giving a third party a deed free from the restrictions so that the property could be used for business purposes. Defendant herein does not seek to use his property for business purposes. Obviously he could not do so.

In *Signaigo* v. *Begun, supra,* the erection of an apartment house with stores was enjoined in an entirely different subdivision, where the restrictions were quite general and indefinite. Only single dwell-

ings had been built on the 74 lots in the subdivision. There remained only six vacant lots. There was testimony to the effect that it was the original intention to restrict the property to residence purposes and dwellings only. Deeds to 18 lots contained, among other provisions, the following clause:

"Nor shall any dwelling costing less than $1,500 be erected."

The situation in the present suit is far different. Neither in the plat nor the advertising, in the statements made by the agents who had originally sold the property, nor in any deed or contract, was there any limitation as to the type of residence that might be built upon the property. In considering restrictions in this particular subdivision, we held in *Miller* v. *Ettinger, supra,* that a restriction limiting the use of property solely to residence purposes does not forbid the erection of a multiple dwelling or apartment house. It is true the question arose in that case in reference to building an apartment house on Collingwood avenue, the street parallel to and one block south of Lawrence avenue. However, the decision was based upon the meaning of the restrictive covenants as applied to the entire subdivision. There is no doubt but that one who purchased lots shortly after the subdivision was laid out could have built an apartment house. There are five of such buildings in the block in which defendant's property is situated. There was no agreement by the owner of defendant's property nor by any subsequent grantee, nor as far as the record shows by anyone, to limit the type of buildings to be erected on defendant's property to a single dwelling house. While it may be unfortunate that such an agreement was not entered into, and a good community spirit would

prompt defendant to adhere to the plan adopted by the vast majority of the owners of the property in the block, there nevertheless is no legal obligation on his part to do so. The decision in *Miller* v. *Ettinger, supra,* is not at all affected by possibly a difference in the neighborhood where the property in question in that case was situated, and where subsequently a 14-family apartment house was erected. It is based solely upon the fact that the restrictions in this subdivision do not forbid the erection of an apartment house. This decision is controlling in the present case.

The restriction in regard to the front building line, as set forth in the deed, refers to Lawrence avenue, which was the front of the lots. There may have been no thought at the time these restrictions were placed on the property that it would be traversed by Fourteenth avenue. The lots were originally 30 feet wide. Had defendant purchased only lot 112, the most westerly lot of his property, he would not have been able to build at all if he had been obliged to build 30 feet from Fourteenth avenue, which plaintiffs claim is the front line of defendant's property. Setting back the houses 30 feet from the front of the lots was for the purpose of having wide lawns and a uniform building line on Lawrence avenue. Defendant proposes to set his building back at least 30 feet from the Lawrence avenue lot line.

Plaintiffs claim *Tear* v. *Mosconi,* 239 Mich. 242, as authority for obligating defendant to build 30 feet from Fourteenth avenue, the new front line of the lot. In that case, a builder at the corner of Palmer Park boulevard and Parkside avenue, who was obliged to build 25 feet from the front line of Palmer Park boulevard, was enjoined from using the side line of the lot on Parkside avenue as the front line

and thus avoiding the building restrictions. While this case is not in point, it in no way sustains plaintiffs' claims, but, on the contrary, tends to controvert them. The restriction in the present case forbidding the erection of a building within 30 feet of the front line of the lot affects only Lawrence avenue, and not Fourteenth avenue.

Section 12, tit. 1, art. 2, Act No. 323, Pub. Acts 1921 (Comp. Laws Supp. 1922, § 5180 [13]), provides that a three-story building must have a rear yard not less than 20 feet deep in case of an interior lot. If the lot is a corner lot, then six feet may be deducted; and if the rear abuts upon a public alley, the yard may be measured to the center of the alley. The alley in this case is 20 feet wide. Defendant proposes to construct his building within four feet of the alley, under the various statutory provisions. The whole question, then, hinges upon whether the alley side of the lot is the "rear" or not.

The act defines a rear yard as the "open unoccupied space on the same lot with a dwelling, between the extreme rear line of the lot and the extreme rear line of the house." Comp. Laws Supp. 1922, chap. 96, art. 1, § 5180 (2); art. 1, § 2, subd. (6). The act *originally* further stated that:

"The front of a lot is that boundary line which borders on the street. In case of a corner lot the owner may elect by statement on his plans either street boundary line as the front. The rear of a lot is the side opposite to the front. *In the case of a triangular or gore lot the rear is the boundary line not bordering on a street.*" Art. 1, § 2, subd. (9), Comp. Laws Supp. 1922, § 5180 (2).

If the act were still in force as it originally stood, the easterly line would seem to be clearly the "rear," *but* Act No. 371, Pub. Acts 1925, § 2, subd.

(9), amended the above section by omitting the italicized sentence, while repeating the remainder. This shows that the legislature intended that the owner should not be limited in the selection of the rear of his property to that side which is not upon a street. There is certainly force in the argument that the logical rear is the side abutting upon the alley. Furthermore, if we consider the lot a quadrilateral, then the 20.3 feet on the north and south line is the side opposite the easterly boundary and the slanting portion must be opposite the alley boundary. If this slanting portion is the "front" then the alley may be regarded as the rear.

Defendant proposes to erect his building six feet from the east line of his property. This is in accordance with the State housing code. He further proposes to keep the building four feet distant from Fourteenth avenue. If he does this, he is acting within his rights.

We are constrained, therefore, to reverse the decision of the lower court and enter a decree dismissing the bill of complaint. Defendant will recover costs.

WIEST, C. J., and CLARK, McDONALD, POTTER, SHARPE, NORTH, and FEAD, JJ., concurred.