McCandless v. Burns, Appellant.

Submitted January 13, 1954. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

The opinion by GRAFF, P.J., specially presiding, of the court below is, in part, as follows:

"The question presented in this case is not free from difficulty. Certain principles of law relative to restrictions in deeds are well-settled. Restrictions may arise: (1) By expressed covenants or (2) By implication (a) from the language of the deed, or (b) from the conduct of the parties. To ascertain the intention of the parties the language of the deed should be interpreted in the light of the subject matter, the apparent object or purpose of the parties, and the conditions existing when it was executed. Building restrictions and similar covenants which restrain a man in the fair enjoyment of his property are not favored in the law. They are strictly construed, and are not to be extended by implication unless the parties clearly so understand and intend: *Baederwood, Inc., v. Moyer,* 370 Pa. 35.

"It is also well-settled that the mere fact that a grantor imposes restrictions on part of a tract which

he sells does not raise an inference that he means thereby to obligate himself to restrict the remainder of his property: *Price et al. v. Anderson et al.,* 358 Pa. 209.

"Building restrictions are lawful and enforceable, but they are not favored in the law, and the courts will not recognize implied rights or extend covenants by implication: *McCloskey v. Kirk,* 243 Pa. 319.

"In considering the case now before us it is first necessary to determine what lots were actually contained in the revised "Homewood Plan" of lots, recorded September 30, 1941. Undoubtedly those lots which were laid out by courses and distances and exact measurements and staked upon the ground must be considered as part of the plan of lots. L. C. D. Greenough, Township Engineer, and the engineer who laid out the plans of lots for William H. Miller, including the one now under consideration, testified as follows: "Lots 62, 63, 64, and 65 are sketched in to indicate how it could be subdivided in subsequent times. The plotted plan stops at the end of 41, which you can see, as the bearings and distances all correspond." And he further testified that Mr. Miller was undecided as to completing the plan, for the reason that it might be necessary to cut down trees, and it would be necessary to complete the entrance onto new Route 8. Other engineers testified that the scaling in of lots is not considered as making them a part of a plan of lots. This testimony stands uncontradicted, and must be considered as being correct. Consequently we have a recorded plan of lots, with four scaled in, which are not properly part of the plan as laid out.

"It must be considered as significant that William H. Miller did not have any part of the plan lying in Center Township approved by the Center Township Commissioners, and further, that the part of the plan

lying in Butler Township was only approved to the intersection of Highland Road and Woodland Road, which is some distance away from the plot of land proposed to be sold.

"A real estate developer has no right and subjects himself to criminal liability if he constructs, opens or dedicates roads for travel without having first secured approval of the Township Supervisors, as required by Section 1142 of The Second Class Township Law, May 1, 1933, P. L. 103; *Chryst Petition*, 69 D. & C. 527.

"The land in the immediate proximity of the plot proposed to be sold is zoned in Butler Township for commercial purposes on both sides of new State Highway Route No. 8, and we observed the commercial aspect of the land lying to the east of State Highway Route No. 8, as well as the commercial business almost opposite Lot 62, and immediately across old State Highway Route No. 8. An observaton of the land proposed to be sold indicates that it is little suited for residential purposes.

"Relative to the intention of William H. Miller, it is significant to note that no building restrictions were placed upon the land sold to Martsoff, which is immediately north of the lands proposed to be sold.

"No part of the land of any lot owner in the plan excepting that owned by the plaintiff abuts upon the land proposed to be sold. The mere fact that William H. Miller in a recorded instrument in 1947 referred to seventy-four lots, and the fact that Lots 62, 63, 64, and 65, were referred to in the settlement of his estate, cannot change the situation. The fact remains that the plots of land so indicated were never actually and finally laid out as lots in any "Homewood Plan" of lots. It is to be considered that there is no recorded consent by the owners of lots in the "Homewood Plan" to the so-called revised "Homewood Plan", recorded in

September, 1941. The defendants in this case seek to maintain the position of dominant lots or tenements without formally accepting the revised plan, so as to make their lots servient to the added lots in the revised plan. It is difficult to see how there can be any mutuality of covenants under such circumstances.

"We conclude that no building restrictions apply to scaled Lots 63, 64, and 65, either by express covenant or by implication; . . ."

Defendants appealed.

*Carmen V. Marinaro,* for appellants.

*J. Campbell Brandon* and *Brandon, Millar, Rockenstein & MacFarlane,* for appellees.

OPINION PER CURIAM, April 1, 1954:
The order filed in this case is affirmed on the Adjudication of the court below filed February 9, 1953, as amended by the Opinion filed August 10, 1953.

Costs to be divided between appellants and appellees.