## Gagliardi v. Shender

*Mesirov, Gelman & Levin,* for plaintiffs.

*Fell & Spalding,* for defendants.

SPORKIN, J., January 17, 1962.—Plaintiffs'[1] complaint in equity prays for an injunction to restrain defendants, Rose Shender and Robert Shender,[2] from constructing an apartment house on premises 5017 Wissahickon Avenue, Philadelphia, Pennsylvania.

Plaintiffs' cause of action is based upon a restrictive covenant contained in a deed from the common grantor of premises 5017 Wissahickon Avenue, and of the respective properties owned by plaintiffs. Certain other bases for relief averred in their complaint were withdrawn by plaintiffs at the trial.

---

[1] Plaintiffs are owners of properties located in an area bounded by the 5000 block of the northeasterly side of Wissahickon Avenue, the 5000 block of the southwesterly side of Copley Road, and the 500 block of the northwesterly side of Clapier Street, in the City and County of Philadelphia.

[2] Originally, the parties defendant in the complaint were Robert Shender and Sandra Hollander. At a hearing for a preliminary injunction held on August 3, 1960, by stipulation, the caption was amended to substitute Rose Shender in place of Sandra Hollander, the said Rose Shender being the record owner of premises 5017 Wissahickon Avnue.

Defendants filed an answer, denying that premises 5017 Wissahickon Avenue are subject to the restrictive covenant, and averring, in the alternative, that if the restriction is applicable, the erection of the proposed apartment house would not be in violation thereof. Issue having been joined, the matter was heard by the writer of this adjudication on September 25, 1961, and October 4, 1961. From the facts admitted in the pleadings, testimony adduced at trial, the stipulation of the parties, and the exhibits admitted into evidence, we make the following:

## Findings of Fact

1. Plaintiffs are Frank Gagliardi, David S. Gans, Vincent Filograna, John F. Mann, Frank J. Hayes, Rudolph Anton and Mildred Anton, his wife, H. Glenn Clare, Bruno Philipp, Querino Teti, Joseph Olfren, Edward J. Hicks, Mary Ethel Fitzpatrick, Robert Hitchings, Jr., Domenic Buonfiglio, Edward J. Smith, John J. Regan and Harold Bradley, and are the owners of the properties appearing below their respective names in the caption of the complaint, all of which properties are situate and located in the city of Philadelphia, State of Pennsylvania.

2. Plaintiffs are the successors in a chain of title which, originated in a deed from Nelson Z. Graves and Ida Johnson Graves, his wife, to Emmett C. Roop, dated July 7, 1923, and recorded in Deed Book J.M.H. 1827, page 194 (referred to as the "Roop" deed).

3. At the time of the conveyance to Emmett C. Roop, Ida Johnson Graves, said wife of Nelson Z. Graves, retained title to premises 5017 Wissahickon Avenue, Philadelphia, Pennsylvania.[3]

---

[3] Ida Johnson Graves was the owner of a large tract of land, of which the land conveyed to Roop was a part. She retained title to three parcels, one of which is 5017 Wissahickon Avenue.

4. Rose Shender acquired title to and ownership of premises 5017 Wissahickon Avenue, Philadelphia, Pennsylvania, from Frank Kolongowski, et ux., by virtue of a deed dated June 15, 1960. This title, after various prior conveyances, derived from Ida Johnson Graves and her husband.

5. The "Roop" deed provides, inter alia:

"And the said grantors, for themselves and their heirs, executors, administrators and assigns hereby covenant to and with the said grantee, his heirs and assigns, that they will hold, grant and convey the property remaining in the said Ida Johnson Graves, wife of Nelson Z. Graves . . . Under and subject to the following conditions and building restrictions, to wit: that no hotel, tavern, drinking saloon, blacksmith, carpenter or wheelright shop or public garage, steam mill, tannery, slaughterhouse, skin dressing establishment, livery stable, glue, soap, candle or starch manufacturing or other building for offensive purpose or occupation shall at any time here forever be erected on any part of the above described lots. That no building or buildings or part of any building or buildings erected on the above described tract of land shall be used for any other purpose whatever except as for private dwellings or residential purposes and the necessary usual outbuildings to be used in connection with the said buildings except that said buildings may be used as consulting office of a licensed doctor of medicine or licensed doctor of dentistry."

6. Premises 5017 Wissahickon Avenue, Philadelphia, Pennsylvania, are embraced within the parcels of land which were subjected to the foregoing provision of the "Roop" deed, and are, therefore, subject to the said restrictions.

7. Robert Shender proposes to erect an 11-unit apartment building upon premises 5017 Wissahickon Avenue, Philadelphia, Pennsylvania.

8. The parties stipulated and agreed that defendants, their heirs and assigns, have no rights in and to the use of the driveway to the rear of the premises of 5017 Wissahickon Avenue, Philadelphia, Pennsylvania, and that the court shall enter a decree permanently enjoining the owners, occupiers and guests of owners and occupiers of 5017 Wissahickon Avenue from using this driveway for any purpose whatsoever.

## Discussion

On July 7, 1923, Ida Johnson Graves and her husband, Nelson Z. Graves, by the "Roop" deed, conveyed to Emmett C. Roop a tract of ground upon which are now located the properties belonging to complaining plaintiffs. At that time, Ida Johnson Graves retained title to three parcels of land, one of which is the site presently owned by defendant Rose Shender, known as 5017 Wissahickon Avenue. In the "Roop" deed, the Graveses specifically convenanted, for themselves and their heirs, executors, administrators and assigns, that they would hold, grant and convey the three tracts of land, subject to the restrictions which are set forth in finding of fact no. 5, supra.[4]

Defendant, Robert Shender, proposes to erect upon this site an 11-unit apartment house. Such use of the premises is opposed by plaintiffs, who predicate their opposition upon the restrictions contained in the "Roop" deed.

Plaintiffs offered evidence tracing defendant Rose Shender's title to premises 5017 Wissahickon Avenue through a deed from Frank Kolongowski, et ux., dated June 15, 1960. The Kolongowskis acquired their title on April 29, 1959, from Alfred R. Beckley, et ux., who took title on March 19, 1957, from Thomas Ryan, et ux. Plaintiffs failed to establish the identity

---

[4] In the "Roop" deed, the Graveses imposed similar restrictions upon the ground which was conveyed by them to Roop.

of the intermediate owners of premises 5017 Wissahickon Avenue between the time the Graveses conveyed this tract, and the time the Ryans acquired it. Although such evidence, if produced, would further tend to illuminate this record, its absence does not constitute a fatal defect in plaintiffs' cause.

Defendants contend, *first*, that plaintiffs' evidence does not sufficiently establish the applicability of the restrictions contained in the "Roop" deed to premises 5017 Wissahickon Avenue, since plaintiffs failed to trace each link in the chain of title from the Graveses to defendant Rose Shender. We find no merit in this contention: Finley v. Glenn, 303 Pa. 131 (1931). Plaintiffs' evidence, which was not contradicted, established that: the Graveses were the predecessors in title to the properties of all the parties to this action; the Graveses retained ownership of premises 5017 Wissahickon Avenue at the time the "Roop" deed was entered of record; and the premises thus retained by the Graveses were expressly subjected to the restrictions contained in the "Roop" deed,—thus demonstrating that the restrictions contained in the deed are applicable to premises 5017 Wissahickon Avenue.

In Finley v. Glenn, supra, it was held that where an owner of lots conveys several of them by a deed containing building restrictions, with a covenant that he will impose the same restrictions in deeds for the remaining lots owned by him, and the deed is recorded, and therafter he conveys the remaining lots by deeds without such building restrictions, his subsequent grantees are bound by the terms of the prior recorded deed, although these grantees have no actual notice of said terms. The court said (page 136):

" 'The weight of authority is to the effect that if a deed or a contract for the conveyance of one parcel of land, with a covenant or easement affecting another parcel of land owned by the same grantor, is duly re-

corded, the record is constructive notice to a subsequent purchaser of the latter parcel. The rule is based generally upon the principle that a grantee is chargeable with notice of everything affecting his title which could be discovered by an examination of the records of the deeds or other muniments of title of his grantor.' "

Since a search of the conveyances made by the Graveses during their tenure of ownership of the subject premises would have disclosed the restrictions embodied in the duly recorded "Roop" deed, defendant Rose Shender is deemed to have been apprised of said restrictions at the time she acquired title.

Defendants, in their briefs, contend that had the entire chain of title from the Graveses to defendant Rose Shender been introduced in evidence, it might have disclosed that the restrictions, although originally applicable to premises 5017 Wissahickon Avenue, had in some manner become extinguished. This, "being an affirmative defense, the burden of proof was on the defendants . . .": Beato v. DiPilato, 175 Pa. Superior Ct. 602, 605 (1954); Baldwin v. Devereux Schools, Inc., 302 Pa. 569 (1931). Defendants failed to meet this burden.

We therefore conclude that premises 5017 Wissahickon Avenue, being subject to the restrictions, may be used only "for private dwellings or residential purposes and the necessary usual private garages and other necessary and usual outbuildings to be used in connection with the said buildings except that said building may be used as a consulting office of a licensed doctor of dentistry."

Secondly, defendants argue that even if the restrictions are held applicable to the subject property, they do not prohibit the erection of any building thereon for use as an apartment house. Accordingly, we are now

obliged to construe the phrase "private dwellings or residential purposes" in order to ascertain whether or not an apartment house use is permitted thereunder. Our inquiry, therefore, is directed to the intention of the parties to the "Roop" deed as evidenced by the language which they employed, interpreted in the light of the subject matter, the apparent object or purpose of the parties, and the conditions existing at the time the deed was executed: McCandless v. Burns, 377 Pa. 18, 19 (1954).

We are mindful of the rules of construction enunciated by the courts of this Commonwealth regarding use restrictions. Building restrictions and similar covenants which restrain individuals in the fair enjoyment of their property are not favored in the law. They are strictly construed, and may not be extended by implication unless the parties to the instrument clearly so understood and intended: Food Fair Stores, Inc. v. Kline, 396 Pa. 397 (1959); Jones v. Park Lane for Convalescents, Inc., 384 Pa. 268 (1956); McCandless v. Burns, supra; Baederwood, Inc. v. Moyer, 370 Pa. 35 (1952); Gerstell v. Knight, 345 Pa. 83 (1942); Culp v. Firestone Tire & Rubber Co., 303 Pa. 257 (1931); Satterthwait v. Gibbs, 288 Pa. 428 (1927); Henry v. Eves, 306 Pa. 250 (1932); Taylor v. Lambert, 279 Pa. 514 (1924); DeSanno v. Earle, 273 Pa. 265 (1922). The applicable legal principles were succinctly stated in Jones v. Park Lane For Convalescents, Inc., supra, at page 272:

". . . restrictions on the use of land are not favored by the law because they are an interference with an owner's free and full enjoyment of his property; that nothing will be deemed a violation of a restriction that is not in plain disregard of its express words; that there are no implied rights arising from a restriction which the courts will recognize; that a restriction is

not to be extended or enlarged by implication; that every restriction will be construed most strictly against the grantor and every doubt and ambiguity in its language resolved in favor of the owner."

Had the "Roop" deed phrased the restriction to allow only "private dwellings" without more, we should have no doubt but that an apartment house use would be excluded. In Taylor v. Lambert, 279 Pa. 514, 516-18 (1924), the Supreme Court held that an apartment house use is prohibited under a restriction limiting usage of the premises to "a private dwelling house", using the following pertinent language:

"In the term 'a private dwelling' the word 'dwelling' restricts the character of building by eliminating all buildings for business purposes . . . The word 'private' further restricts the buildings to be placed thereon by excluding all such as are used for residential purposes of a public character, like hotels and general public boarding or apartment houses. An apartment house is not a number of private dwellings, built one upon another, but a collection of dwellings objectionable to the restriction, which called for a single dwelling . . . An apartment house is not strictly a private dwelling; it is a place for housing a number of people grouped in families assigned to different sections in the same structure. Carried to its logical conclusion (as the size increases so does the population), it would embrace a building twenty stories high, or forty stories high. Ordinarily everyone knows the difference between a private dwelling house and an apartment house.

"Such restriction is violated by the use of a building on the premises as a public boarding house . . . or by three families living separate and apart . . . The distinction between a private dwelling house or a private residence, on the one hand, and a house built or

occupied as a residence for two or more families, is quite obvious. In the one case it is single, private and personal; in the other it is a sort of tenement affair. While the families occupy separate apartments distinct from each other, they are not private residences as the term is ordinarily understood.

"The restriction in this deed prohibits the erection of an apartment house."

Taylor was followed by the Supreme Court in Fox v. Sumerson, 338 Pa. 545 (1940). There the court affirmed a lower court decision enjoining defendant from converting a private home into a duplex apartment where the restriction limited the use of the premises to "private dwelling houses".

In the instant case, however, the parties to the "Roop" conveyance enlarged the scope of permitted uses beyond that contained in the deeds construed in either the Taylor or Fox cases. In addition to "private dwellings", the parties expressly added the words "or residential purposes". The use of the conjunction "or" is significant, in that it clearly manifests the intention of the parties that the stated uses be alternative to one another: Shorter Oxford English Dictionary, Vol. 2, at pages 1378-79. "Or" is also defined in Black's Law Dictionary, Fourth Ed., page 1246, as "a disjunctive particle used to express an alternative or to give a choice of one among two or more things." Cf. Garratt v. Philadelphia, 387 Pa. 442, 446 (1956). It is therefore obvious that the parties intended that the use of the premises be restricted to private dwellings *or* residential purposes and the stated accessory uses.

Plaintiffs urge that the term "residential purposes" must be interpreted according to the familiar maxim of *ejusdem generis*. This rule of construction holds that "where specific expressions are followed by those which are general, the latter will be confined to things

of the same class as the former": Burns v. Coyne, 294 Pa. 512, 516 (1928).

*Ejusdem generis* is merely a guide in the construction of statutes and written instruments. The doctrine should never be applied to override the real purpose of the writing to be construed: Commonwealth v. Klucher, 326 Pa. 587 (1937). Thus, in Pocono Manor Association v. Allen, 337 Pa. 442 (1940) (strongly relied upon by plaintiffs), the Supreme Court applied the maxim to a restriction permitting "cottage residences and dwelling purposes" so as to exclude the erection of a duplex apartment house. Justice Maxey noted (at page 445) that no apartment houses had ever been built in the community and that "Houses adapted to the occupancy of several families are incongruous to the characteristic charm of rural life".

In Pocono Manor, *ejusdem generis* did no more than effectuate the true intention of the parties as gleaned from extrinsic circumstances. No similar conditions appear in this record. The subject parcel is located in the midst of an urban community where residence in apartment dwellings is neither uncommon nor uncharacteristic. To employ the maximum *ejusdem generis* here would contradict the clear intention of the parties to permit alternative usage of the premises through the use of the conjunction "or". A court may not redraft an instrument under the guise of judicial construction.

Moreover, it is manifest that unlike "cottage residences", the term "private dwellings" embodies all species of the genus, "single family dwelling". In such a situation, it has been stated that the doctrine of *ejusdem generis* does not control, since the general words (in this case "residential purposes") must bear a different meaning from the specific words or be surplusage: Weiss v. Swift & Company, 36 Pa. Superior Ct. 376 (1908). In Pocono Manor, "cottage residences

and dwelling purposes" was construed to mean "cottage residences" and dwellings like "cottage residences". In the instant case, to interpret the restriction to allow "private dwellings" or residences similar to "private dwellings" would render the "or" clause meaningless. Certainly the parties to the "Roop" deed did not intend the latter result for it could have been more readily accomplished by merely omitting "residential purposes" altogether. Accordingly, we reject the rigid application of the maxim of *ejusdem generis* in construing the subject restriction.

We are convinced that an apartment house use is permitted within the language "residential purposes". Webster's New International Dictionary, 2nd Ed., defines "residential" as: "used, serving, or designed as a residence or for occupation by residents; as a *residential* hotel. Adapted to or occupied by residences; as a *residential* quarter. Of, pertaining to, or connected with, residence or residences; as *residential* trade, qualifications or zones. Of or pertaining to a resident." Significantly, the same source defines "apartment house" as "a building containing a number of separate residential suites . . ." It is clear beyond doubt that use of the subject premises for 11 apartments constitutes a residential purpose. The term "residential purposes" is employed in contradistinction to "business", "industrial", and "commercial" purposes. To narrow further the restriction to exclude multi-family residences would do violence to the clear intent of the parties to permit alternative usage. Of course, an apartment house development may be so large and extensive as to constitute a business enterprise. Since the 11 unit structure proposed by defendants does not approach this magnitude, this consideration is not operative here. Cf. Bennett v. Lane Homes, Inc., 369 Pa. 509, 514 (1952).

Although we have not been referred to a single Pennsylvania decision construing the precise lan-

guage here involved: "It is the weight of authority that such a restriction in and of itself does not prohibit use of the land for various types of multiple dwellings . . .", including apartment houses: Annotation: Multiple Residence as Violation of Restrictive Covenant, 14 A. L. R. 2d 1376, 1403. Courts in other jurisdictions which have construed "residential purposes" have found that an apartment house use is not violative of the restriction: Virgin v. Garrett, 233 Ala. 34, 169 So. 711 (1936) ; Lewenstein v. Brown, 200 Ga. 433, 37 S. E. 2d 332 (1946) ; Brandenburg v. Country Club Building Corp., 332 Ill. 136, 163 N. E. 440 (1928) ; Ulmer v. Ulrey, 280 Ky. 457, 133 S. W. 2d 744 (1939) ; Yorkway Apartments v. Dundalk Co., 180 Md. 647, 26 A. 2d 398 (1942) ; Davis v. Sarvari, 250 Mich. 427, 230 N. W. 176 (1930) ; Jones v. Mulligan, 121 A. 608 (1923; NJ Eq.) ; Bennett v. Petrino, 235 N. Y. 474, 139 N. E. 578 (1923) ; Charlotte Consol. Constr. Co. v. Cobb, 195 N. C. 690, 143 S. E. 522 (1928) ; Arnoff v. Williams, 94 Ohio 145, 113 N. E. 661 (1916) ; Jernigan v. Capps, 187 Va. 73, 45 S. E. 2d 886 (1947).

Pennsylvania cases which are seemingly contra to those cited above are all readily distinguishable. In Kauffman v. Dishler, 380 Pa. 63 (1955), in the footnote at page 68, the court stated:

"In Taylor v. Lambert, 379 Pa. 514, 124 A. 169, Fox v. Sumerson, 338 Pa. 545, 13 A. 2d 1, and Pehlert v. Neff, 152 Pa. Superior Ct. 84, 31 A. 2d 446, the restriction was against any building designed for any purpose other than a *'private* dwelling house', or 'a *private* residence', and it was held that the word 'private' excluded buildings used for residential purposes of a *public* character, such as hotels and general public boarding or apartment houses, an apartment house not being strictly a *private* dwelling. In Pocono Manor Association v. Allen, 337 Pa. 442, 12 A. 2d 32, the restriction allowed only buildings 'for cottage residences

and dwelling purposes', and it was held that the dominant idea of '*cottage* residences' excluded apartment houses or multiple dwelling houses. In Gerstell v. Knight, 345 Pa. 83, 26 A. 2d 329, it was held that a covenant that 'one *residence* only shall be built' on the tract was a restriction on the *use* of the land and that the word 'residence' meant that only one place of abode should be built for occupation by one person alone or with his family . . .''

To adopt plaintiffs' contention and interpretation of the word "residential" would require the insertion of the words "single family" before "residential". The rules of construction referred to, supra, make such a broadening of the restriction inappropriate.

Had the parties to the "Roop" conveyance intended to limit the use of the subject premises to single family dwellings, they would not have inserted the phrase "or residential purposes" after "private dwellings", the latter term being sufficient to accomplish that purpose: Taylor v. Lambert, supra; Fox v. Sumerson, supra. See Kauffman v. Dishler, supra, at page 20. Moreover, the parties in the "Roop" deed expressly set forth in the restriction a list of objectionable uses, without including apartment houses therein. We therefore conclude that the proposed 11-unit structure is not violative of the restrictions contained in the "Roop" deed, and render the following . . .

### Decree Nisi

And now, to wit, January 17, 1962, it is ordered and decreed that plaintiffs' complaint be and the same is dismissed, all parties to pay their own costs; and by stipulation of the parties the owners, occupiers and guests of owners and occupiers of premises 5017 Wissahickon Avenue, Philadelphia, Pennsylvania, are permanently enjoined from using the driveway located at the rear of said premises.

The prothonotary will enter this decree nisi and give notice thereof to the parties or their attorneys, and unless exceptions thereto are filed within 20 days, this decree nisi shall be entered as the final decree of the court.