**Branch v. Royal**

*Archie O. Wallace,* for plaintiffs.

*Michael Halliday,* for defendants.

ACKER, J., December 23, 1969.—The matter for determination is in equity. Plaintiffs by a complaint pray that defendants be enjoined from violating the restrictive covenant which plaintiffs claim is applicable to a trailer moved upon a lot in the same allotment where they reside. Plaintiffs do not pray for money damages. The matter arises from defendants' purchasing and moving a 12 x 60 foot trailer upon a property in the same allotment as plaintiffs".

The language of the covenant which requires interpretation is "that no dwelling house shall be erected on the said land any part of which is 75 feet distant from the centerline of the public road fronting said land; that no detached building shall be erected; that building shall be confined to a single dwelling to cost not less than $5,000; *that no building shall be moved from another location to this land."* (Italics supplied.) It is the last clause upon which plaintiffs rely. . . .

This court must be guided by well-recognized principles of interpretation. These rules are summarized in Jones v. Park Lane For Convalescents, Inc., 384 Pa. 268, 272, 120 A. 2d 535 (1956):

"However variously phrased, they are, in substance, that restrictions on the use of land are not favored by the law because they are an interference with an owner's free and full enjoyment of his property; that nothing will be deemed a violation of a restriction that is not in plain disregard of its express words; that there are no implied rights arising from a restriction which the courts will recognize; that a restriction is not

to be extended or enlarged by implication; that every restriction will be construed most strictly against the grantor and every doubt and ambiguity in its language resolved in favor of the owner."

See also McCandless v. Burns, 377 Pa. 18, 104 A. 2d 123 (1954); Siciliano v. Misler, 399 Pa. 406, 409, 160 A. 2d 422, 80 A. L. R. 2d 1253 (1960); Ratkovich v. Randell Homes, Inc., 403 Pa. 63, 68, 169 A. 2d 65 (1961).

Consideration is first directed towards the contention of defendants that the placing of the restrictions solely in the recorded plan is not sufficient to give notice, actual or constructive, to the property owners of the restrictions.

The Act of April 28, 1899, P. L. 123, sec. 1, 21 PS §399, provides for the recording of a plan of a subdivided tract and, in fact, imposes a penalty for the failure to so record after due notice. In Lund v. Heinrich, 410 Pa. 341, 348, 189 A. 2d 581 (1963), although the court held that tax records were not sufficient notice, it affirmed that a grantee is bound as stated in Salvation Army, Incorporated, Trustees v. Lawson, 293 Pa. 459, 143 Atl. 113 (1928), at page 463, " '. . . and also by what appeared in the appropriate indexes in the office of the recorder of deeds, and of the various courts of record whose territorial judisdiction embraced the land in dispute. . . .' "

It is also recognized that a property owner is obligated to become aware at his peril that building restrictions may be present in prior deeds in his chain of title which are recorded, even though he had no actual notice of such deeds and conditions: Gagliardi v. Shender, 28 D. & C. 2d 164 (1962). Although the deed in the instant case did not contain the restriction as would certainly have been the better practice, it did make reference to the book and page of the recorded plan in the records of the office of the Recorder

of Deeds in Mercer County. We believe this to be sufficient notice of the restrictions herein concerned, although no case was found directly in point.

The cases cited by plaintiff of Hughes v. Mattingly, 7 Mercer 192, and Hoffman v. Balka, 175 Pa. Superior Ct. 344, 104 A. 2d 188 (1954), have been examined but are found to be inapposite and of no assistance.

It is next contended that because the restrictions as contained in the original plan as recorded state that the owners of the plan ". . . desire that the same be recorded as such, and that the lots set forth in said plan shall be sold subject to the following conditions and restrictions . . . ," there is nothing more than an indication of a will as opposed to a specific direction sufficiently stated to bind defendants by such a restriction. Certainly, the word "desire" is not as positive as many other possible words which could have been used. The test, however, is whether it is indicative of future contemplated action or expresses a present intent: Detwiler v. Capone, 357 Pa. 495, 55 A. 2d 380 (1947), at page 384. In Taylor v. Hartman, 370 Pa. 146, 87 A. 2d 785 (1952), the issue was whether plaintiff had exercised the option due to his somewhat vague and indefinite language. He had, however, within the 60-day period allowed stated to the owner of the property, "I am going to take this." When asked about certain tests which were to be performed by the State Highway Department to determine whether the gravel would meet specifications, the purchaser replied, "Regardless of whether it passes their specifications or not, I am going to use my own judgment. I think it's all right. I'm going to take it." This was held to be sufficiently specific to indicate a present intent to exercise an option.

It is the position of this court that the word "desire," when read in context, clearly indicated an intention

to impose upon subsequent purchasers the conditions as set forth in the restriction.

It is further contended by defendants, however, that they have not violated the conditions by moving a house trailer upon these premises for they contend that a house trailer is not a building. Plaintiffs contend that once the trailer becomes attached to the real estate upon a foundation, as occurred in this case, it clearly is a building, citing Lower Merion Township v. Gallup, 158 Pa. Superior Ct. 572, 46 A. 2d 35 (1946). In Sweigart v. Peiffer, 57 Lanc. 207, 210 (1960), it was held that a house trailer is simply a mobile house differing from ordinary houses only in the respect of ease of movement. Plaintiffs sought to enjoin defendants from occupying land with house trailers, claiming that they violated a restrictive convenant prohibiting the erection of "any building of any kind except a single one-family private dwelling house. . . ." The court denied plaintiff's prayer for relief. A building is defined by Bouvier's Law Dictionary as "an edifice, erected by art, and fixed upon or over the soil, composed of brick, marble, wood or other proper substance, connected together, and designed for use in the position in which it is so fixed. Every building is an accessory to the soil and it is, therefore, real estate; it belongs to the owner of the soil."

As taken from Webster's Collegiate Dictionary, Fifth Edition, a building is: "1. A structure which is built especially on a space of land and for permanent use as a house, factory, etc." It would appear, therefore, that in order to be a building, it must be constructed for contemplated use with a piece of real estate or soil. This is particularly true in view of the context in which the owners set forth the word in their restrictions, "That no building shall be moved from another location to this land." In Sampson Short v. Miller & Co., 120 Pa. 470, 476, 14 Atl. 374 (1888), deal-

ing with a mechanic's lien, it was held that a structure which is erected to cover an engine or boiler which is permanent and suited for its intended purpose is a building. In Ogontz Land & Improvement Co. v. Amos Johnson, 168 Pa. 178, 31 Atl. 1008, 1009 (1895), a porch built upon brick foundations and roofed permanently attached to the whole front of the house was regarded as a part of the building.

What did the developers intend in this case? At the trial of the case it was agreed by counsel for plaintiffs that if defendants had purchased sections of a home which had been prefabricated and moved it upon this land for erection that it would not have come within the restriction. It would appear that the owners were attempting to prevent old buildings, such as those in the nearby Army camp, from being moved upon these premises. In addition, it appeared that they were attempting to confine the structures to a single dwelling with a cost of not less than $5,000. This was to assure that there would be, by the cost of dwellings at that time, a suitable structure commensurate with the intent of the owners and the development of their land.

Where language in a deed or deed restriction is not clear, in order to ascertain the intention of the parties, the language should be interpreted in the light of the conditions existing when it was made: Parker v. Hough, 420 Pa. 7, 215 A. 2d 667 (1966).

Restrictions against the erection of a house or dwelling house is regarded as a restriction only as to the type of construction and not its subsequent use. If there is to be an effective restriction, it should be plainly expressed and not left to implication: Kauffman v. Dishler, 380 Pa. 63, 110 A. 2d 389 (1955).

Trailers were known and common in the year of 1950 when the restrictions were created by the owners of the plan. If they had wished, they could have specifically restricted trailers. To have a literal enforce-

ment of the restriction, a trailer must, in fact, be a building which has been such previously to its removal to that land. If this trailer had been moved in sections on to the land prior to any assembly, it clearly would not have been a violation of any restriction. Likewise, if a prefabricated home were moved upon this land, plaintiffs would be without remedy. The evidence in this case demonstrated that the trailer was manufactured specifically for the specifications and requirements of defendants. It was placed on wheels by the manufacturer and transported to its present location. There is no evidence that it had ever been placed on any foundation, been used as a home or that the wheels had been removed prior to arriving at defendants' property.

When taking the restrictions imposed by the developer, the intent appears to prevent a previously erected building to be moved upon the subject property, to require that whatever building is erected have a cost of $5,000 or more and it be a single-dwelling unit. The trailer in this case, exclusive of tax, cost $7,800. In addition to being the conventional trailer, it has a four-foot addition to the livingroom area, which had to be separately installed after the trailer arrived. It is a single-family dwelling. Although we agree with the positions of plaintiffs that their property may well have depreciated in value as a result of the placement of this trailer on land contiguous to their own, the issue is solely whether such installation is specifically denied under the express language or by a reasonable interpretation thereof as contained in the restrictions. Being unable to so find, the relief prayed for by plaintiffs must be denied. . .

### DECREE

And now, December 23, 1969, the prayer of plaintiffs is denied.