## Shur v. Ciccarone, Inc.

*Allen O. Olin*, for plaintiffs.
*William H. Lamb*, for defendants.

KENT, J., November 7, 1973.—This matter is before the court on plaintiff's application for a preliminary

injunction upon which a rule to show cause was entered October 19, 1973. After hearing thereon, we make the following

## FINDINGS OF FACT

1. Plaintiffs are copartners trading as Jake Shur & Sons with places of business located at the Parkway Shopping Center, Route 202, West Goshen Township, and at 34 West Gay Street, West Chester, Pa.

2. Defendant, Ciccarone, Inc., is a duly organized and existing Pennsylvania business corporation which owns and operates the aforesaid Parkway Shopping Center.

3. Defendant, Torelli, Inc., is a duly organized and existing Pennsylvania business corporation with a place of business located at 509 Chester Pike, Delaware County, Pa.

4. On or about July 15, 1972, plaintiffs entered into a lease agreement with defendant, Ciccarone, Inc., whereby said defendant leased to plaintiffs premises known as store number 9-A in the Parkway Shopping Center for a term of two years commencing October 1, 1972.

5. Said lease agreement provided, inter alia;

"Lessor agrees that during the term of this lease and any renewals thereof, by way of exercising options by Lessee or otherwise, (a) Lessor shall not lease any space in its shopping center to any other Lessee which other Lessee would operate a business in direct competition to or with the business of the Lessee herein; and (b) Lessor shall not permit any other Lessee in its shopping center to operate a business in direct competition to or with the business of the Lessee herein. As clarification, Lessee herein proposes to operate an 'Army and Navy Store' type business and sell items usually sold by such a business and items presently

sold by Lessee at his present store located at 34 West Gay Street, West Chester, Pennsylvania."

6. Prior to the execution of the final lease agreement, plaintiffs had proposed a form of restrictive covenant providing as follows:

"Lessor agrees that during the term of this lease and any renewals thereof, by way of exercising options by Lessee or otherwise, (a) Lessor shall not lease any space in its shopping center to any Lessee which intends to sell merchandisè which in any way is similar to the items of merchandise that the Lessee herein proposes to sell; and (b) Lessor shall not permit any Lessee in its shopping center to sell merchandise which in any way is similar to the items of merchandise that the Lessee herein sells. As clarification, the Lessee herein proposes to sell all items usually sold in an 'Army & Navy Store' together with having for sale a complete line of mens' furnishings, for dress wear, casual wear, sportswear and working wear, including, by way of illustration and not by way of limitation, jackets, pants, shirts, shoes, socks, underwear, belts, caps, hats, raingear, sneakers, vests, camping gear and related items and accessories."

This covenant was rejected by defendant, Ciccarone, Inc.

7. Pursuant to the aforesaid lease agreement, plaintiffs commenced business operations in the Parkway Shopping Center on November 20, 1972, and have done so continuously from that date.

8. At the West Chester and the Parkway Center stores, plaintiffs offer for sale at retail various brands of men's clothing consisting of jeans, Levi's, workwear, sportswear, shoes, casuals, such as slacks and sweaters, some dress clothes, socks, boots, underwear, caps, shirts and other articles of wearing apparel together

with tents, foot lockers, sleeping bags and similar articles.

9. Over 50 percent of the sales volume of plaintiffs' Parkway Center store has accrued from the sale of the "Levi" and "Mr. Wrangler" lines of merchandise.

10. At both the West Chester and the Parkway Center Stores, plaintiffs' merchandise is displayed in piles on tables and counters with some items hung for display purposes.

11. One other store in the Parkway Shopping Center, Kelly's Sporting Goods, sells some items of the same types of merchandise as plaintiffs.

12. In February or March of 1973, Michael B. Torelli, treasurer of defendant, Torelli, Inc., came to plaintiffs' Parkway Center store and advised plaintiff, Alan Shur, of his company's interest in acquiring a location in the Parkway Shopping Center. Mr. Shur advised Mr. Torelli that plaintiffs have a "no competition" lease but did not exhibit the same to Mr. Torelli.

13. In May of 1973, at the request of Mr. John Ciccarone, secretary-treasurer of Ciccarone, Inc., plaintiffs, Alan and Stephen Shur, went to defendant's place of business on Baltimore Pike in Delaware County. There they met with Messrs. John Ciccarone, Michael Torelli and David Torelli of the respective defendant corporations. After viewing the Torelli store, plaintiffs expressed the opinion that a similar operation in the Parkway Center would conflict with their business. Messrs. Ciccarone and Torelli did not concur in this opinion.

14. Thereafter, defendant, Ciccarone, Inc., entered into a lease agreement with defendant, Torelli, Inc., for the occupancy of store number 15 in the Parkway Shopping Center by Torelli, Inc., as a men's clothing store. Torelli, Inc., has not yet gone into occupancy pursuant to said lease.

15. Defendant, Torelli, Inc., proposes to engage in the retail sale of men's suits, sports coats, shirts, neckties, belts, dress clothing and similar items of clothing. Defendant Torelli, Inc., does not sell shoes or items other than wearing apparel.

16. Defendant, Torelli, Inc., proposes to display its merchandise on hangers in a custom-lighted carpeted showroom supplemented by eight dressing rooms.

17. Defendant, Torelli, Inc., has not sold and does not propose to sell items of the "Mr. Wrangler" brand.

18. Defendant, Torelli, Inc., has sold and proposes to sell items of the "Levi" brand. "Levi" sales have accounted for less than eight percent of Torelli, Inc.'s gross business.

## DISCUSSION

By their complaint in equity, plaintiffs seek to enjoin defendants from engaging in or conducting or permitting the sale of goods in alleged violation of the restrictive covenant of plaintiffs' lease. There is no challenge to the validity of the covenant and such covenants are valid and enforceable in this Commonwealth so long as they do not result in an unreasonable restraint of trade: Hoffman v. Rittenhouse, 413 Pa. 587 (1964).

The principles which govern the application of such covenants are succinctly set forth in Great A. & P. Tea Co. v. Bailey, 421 Pa. 540 (1966), at 544-45, as follows:

"It is a general rule of contract interpretation that the intention of the parties at the time the contract is entered into governs: Heidt v. Aughenbaugh Coal Co., 406 Pa. 188, 176 A. 2d 400 (1962). This same rule also holds true in the interpretation of restrictive covenants: Baederwood, Inc. v. Moyer, 370 Pa. 35, 87 A. 2d 246 (1952), and McCandless v. Burns, 377 Pa. 18, 104 A. 2d 123 (1954). However, in Pennsylvania, there is an important difference in the rule of inter-

pretation as applied to restrictive covenants on the use of land. It is this. Land use restrictions are not favored in the law, are strictly construed, and nothing will be deemed a violation of such a restriction that is not in plain disregard of its express words: Jones v. Park Lane For Convalescents, 384 Pa. 268, 120 A. 2d 535 (1956); Sandyford Pk. C. Assn. v. Lunnemann, 396 Pa. 357, 152 A. 2d 898 (1959); Siciliano v. Misler, 399 Pa. 406, 160 A. 2d 422 (1960); and Witt v. Steinwehr Dev. Corp., 400 Pa. 609, 162 A. 2d 191 (1960). Also, as stated by Mr. Chief Justice Stern in the first cited case, at 272, in reference to land use restrictions: '. . . [T]here are no implied rights arising from a restriction which the courts will recognize; that a restriction is not to be extended or enlarged by implication; that every restriction will be construed most strictly against the grantor and every doubt and ambiguity in its language resolved in favor of the owner.' "

Considering the instant covenant in the light of those principles, the first sentence thereof provides that lessor, Ciccarone, Inc., shall not lease to nor permit any other lessee to operate a business "in direct competition to or with" plaintiffs. A more explicit declaration of intention is set forth in the second sentence thereof which provides "as clarification, lessee herein proposes to operate an 'Army and Navy Store' type business and sell items usually sold by such a business and items presently sold by lessee at his present store located at 34 W. Gay Street, West Chester, Pa."

It is evident by the use of language employed that the parties did not intend that there be no competition among lessees for the covenant does not so state. This is further demonstrated by the fact that at least one other store presently operating in the shopping center

sells some of the same items which plaintiffs do without objection. In recognition of the ambiguity inherent in attempting to define that which constitutes "direct competition," the covenant sets forth two separate yardsticks by which direct competition is to be measured, at least qualitatively. The first thereof comprises such competition as might be offered by another "Army and Navy Store type business," and the second thereof comprises such competition as might be offered by another lessee's selling "items presently sold by lessee at this present store . . ."

With respect to the first of these proposed yardsticks plaintiff offered no evidence tending to establish any recognized trade or commercially accepted meaning of the term "Army and Navy Store." Defendant, Ciccarone, Inc., made such an attempt by its offer into the record of a listing of the categories of merchandise sold at one other store designating itself an "Army and Navy Store." However, this fell far short of establishing a generally recognized and commercially accepted meaning of the term.

The second stated yardstick of items sold by plaintiffs at their West Chester store does furnish a workable basis for the determination of that which constitutes direct competition. Comparing those items with the items proposed to be sold by Torelli, Inc., as indicated on the present record, it is apparent that there is but a very slight overlapping. The only basic similarity in the two categories is that both plaintiff and Torelli, Inc., propose to sell men's clothing. But the covenant, as stated, does not proscribe the sale of men's clothing per se and its express words are not to be extended or enlarged by implication as set forth in the principles enunciated above.

This view of the parties' intentions is confirmed by the fact that a preliminary draft of the covenant pro-

posed by plaintiffs to defendant, Ciccerone, Inc., which would have extended to a proscription of the sale of "a complete line of men's furnishings" was rejected in favor of the final wording.

A consideration of the quantitative aspects between plaintiffs' existing business and that proposed by Torelli, Inc., makes the distinction even more apparent. Of the two lines of merchandise which, according to plaintiffs' testimony, account for over 50 percent of their sales, Torelli, Inc., will not carry one thereof and the second accounts for less than eight percent of its sales. In the absence of any particularly stated method of computing the extent of competition, a percentage of sales comparison has been employed: Sun Drug company v. West Penn Realty Company et al., 439 Pa. 452, at 462 (1970).

Further evidence of the absence of direct competition between the existing and proposed businesses is furnished by the wide differences in merchandising techniques to be employed. These differences exist not only in the brands and types of merchandise to be sold but also in the methods of display and decor.

We, therefore, conclude that plaintiffs have failed to establish the allegations of their complaint that there has been a violation of the restrictive covenant and, accordingly, dismiss the said complaint.